Elvira CASTANO and Marcos Gonzalez, Appellants,

v.

SAN FELIPE AGRICULTURAL, MANUFACTURING, & IRRIGATION COMPANY, J.M. Stone, and David Bolner, Appellees.

No. 04–01–00382–CV.

Court of Appeals of Texas, San Antonio.

April 21, 2004.

Rehearing Overruled Aug. 9, 2004.

Appeal from 3rd Judicial District Court, Val Verde County; Thomas F. Lee, Judge.[1]

Judith Ramsey Saldana, Law Office of Judith Ramsey Saldana, San Antonio, for appellants.

1. Judge Lee signed the orders granting the motions for summary judgment which are the subject of this appeal, while the Honorable Mickey Pennington signed the order denying the appellant's motion to disqualify Judge Lee.

Richard D. Pullman, K. Mark Vincent, Amy D. Hampton, Vial, Hampton, Koch & Knox, L.L.P., Dallas, Janis F. London, Law Office of Jan London, for appellees.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by PAUL W. GREEN, Justice.

This case arises from a contract dispute. Appellee San Felipe Agricultural, Manufacturing, & Irrigation Company ("San Felipe") ran water through a ditch which traversed alongside and through a portion of property which appellant Elvira Castano ("Castano") owned. Castano filed suit against San Felipe and others, including appellees J.M. Stone ("Stone") and David Bolner ("Bolner"), alleging several causes of action, including trespass and intentional infliction of emotional distress. A summary judgment was granted in favor of appellees Stone and Bolner. The case against San Felipe, however, went to mediation where a draft of a settlement agreement was created and signed by both parties. San Felipe subsequently modified the agreement, putting the terms into a formalized document which Castano refused to sign, disputing several of the terms. San Felipe filed a motion for summary judgment against Castano, claiming breach of settlement agreement. Following a hearing, the trial court granted San Felipe's motion. Castano now appeals in four issues.

### BACKGROUND

San Felipe provides irrigation water to property owners. San Felipe supplies this water through a series of ditches, channeling the water onto the customers' property. In order to facilitate this process, San Felipe obtained a blanket easement across 1500 acres in Del Rio, Texas. The easement provides for "sufficient ground on each side of the ... ditches as may be required for the widening, straightening or cleaning and repairing of said ditches and the passing along of hands and material for repairing, straightening and cleaning of said ditches." In 1993, appellant Elvira Castano purchased a tract of land located within the 1500 acres. Following Castano's purchase of the land, San Felipe continued to access the ditch in order to maintain it, removing debris in order to prevent blockage of the water flow.

In December of 1996, Castano filed suit against San Felipe and others, including appellees J.M. Stone and David Bolner, alleging trespass, intentional infliction of emotional distress, failure to provide water, and abandonment or adverse possession among other specific complaints. Stone and Bolner filed a motion for summary judgment along with a motion for a more definitive statement regarding the specific acts alleged against them. The trial court ordered Castano to amend her first original petition to allow Stone and Bolner notice of the allegations against them. Castano failed to timely amend her pleadings, and the court granted Stone and Bolner's motion for summary judgment.

The case against San Felipe was sent to mediation, and, on May 29, 1997, Castano, along with her attorney L. Brent Farney, and San Felipe reached an agreement which was signed by all of the parties involved. In the months that followed, several failed attempts were made to negotiate a final draft of the mediated settlement agreement ("MSA"). San Felipe sought to enforce the MSA, filing a motion for summary judgment as to Castano's alleged breach. Shortly thereafter, Farney withdrew as Castano's attorney. The court granted San Felipe's motion, attach-

ing a copy of the signed MSA and setting out the material terms therein.

Following the court's decision on the summary judgment, a dispute arose over the location of a lateral easement on the Castano property. Under the terms of the MSA, all disputes regarding the location of the easement were to be submitted to arbitration. After several attempts to schedule arbitration, the date of February 16, 2000, was finally set. Although Castano appeared at the arbitration, she did not participate. The arbitrator determined the placement of the ditch to be as per the survey and found that San Felipe was entitled to remove two concrete structures which were erected after the settlement agreement was reached between Castano and San Felipe. San Felipe then filed a motion to confirm the arbitration award.

Following the filing of San Felipe's motion, Castano filed a motion to recuse and disqualify, seeking to remove Judges Lee, Pendergrass, and Thurmond, the only judges in Val Verde County District Court. The matter was referred to Administrative Judge Stephen Ables who then assigned the issue to Judge Mickey Pennington. Castano failed to appear for the hearing, and Judge Pennington denied the motion. Judge Lee subsequently set San Felipe's motion to confirm the arbitration award for a hearing. Castano filed a second motion to disqualify shortly before this hearing was set to begin. In spite of Castano's new motion, Judge Lee entered an order confirming the arbitration award.

Castano now appeals from both summary judgments and the order confirming the arbitration award, as well as from the court's alleged failure to hear the motions to disqualify.

### SAN FELIPE'S MOTION FOR SUMMARY JUDGMENT

In her first issue, Castano argues the trial court erred in granting the summary judgment in favor of San Felipe because she allegedly raised several genuine issues of material fact. In order to obtain a traditional summary judgment, the moving party must show that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). In reviewing the grant of a summary judgment, we must indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Johnson*, 891 S.W.2d at 644; *Nixon*, 690 S.W.2d at 549. A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of the plaintiff's cause of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). Once the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence that would raise a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

On appeal, Castano argues that San Felipe is not entitled to summary judgment because she has raised a genuine issue of material fact as to the enforceability of the MSA, as well as to her alleged breach of the MSA. She also contends that, if the summary judgment was erroneously granted, then the arbitration award was erroneously granted.

### *Enforceability of the Mediated Settlement Agreement*

Castano lists several reasons to support her contention that the mediated settlement agreement presented by San Felipe to the trial court is unenforceable. First, she argues that the agreement is not binding because it contains language contem-

plating "final documentation", as well as "subject to" language. Second, Castano contends that there are four different versions of the MSA, creating a fact issue as to the parties' intent to be bound. Finally, Castano argues that the agreement cannot be enforceable as a Rule 11 agreement as contemplated by San Felipe.

### *"Final Documentation" and "Subject To" Language*

First, Castano argues that the MSA contains language which states that "final documentation" and "further documents" are necessary to reach a "closing" on the agreement, indicating the parties' lack of intent to be bound by the MSA. She also cites "subject to" language in the document, arguing that this statement creates a condition precedent to the formation of the contract. Castano points to case law indicating that the determination of whether formal documentation is a condition precedent to the formation of a contract or merely a memorial of an already enforceable contract is a question of fact for the jury. *See Foreca, S.A. v. GRD Dev. Co., Inc.*, 758 S.W.2d 744, 746 (Tex.1988). The facts of *Foreca*, however, are not analogous to the facts of the case at hand.

In *Foreca*, the parties drafted an agreement containing material terms for the sale and purchase of amusement park rides. *Foreca*, 758 S.W.2d at 744. The document included the caveat that the agreement was, "subject to legal documentation contract to be drafted by" the attorneys. *Id.* The Texas Supreme Court found the intention of the parties to be an issue of fact. *Id.* at 746.

In the instant case, Castano refers to language regarding "final documentation;" however, this language simply refers to the time period in which San Felipe was obligated to pay Castano the agreed upon sum as compensation for her mental anguish: "upon execution of final documentation." The original MSA also references "additional documents" but only insofar as these documents are necessary to "implement the provisions and spirit of" the agreement. In fact, the agreement goes on to say that "notwithstanding such additional documents the parties confirm that this is a written settlement agreement as contemplated by Section 154.071 of the Texas Civil Practice and Remedies Code." The statements referring to "closing" and performance "subject to" further action[2] are also taken out of context. Unlike *Foreca*, none of these statements suggests or infers that the parties intended the agreement to be subject to any subsequent action by the parties or that these events were to be conditions precedent to the formation of an enforceable contract. *Hardman v. Dault*, 2 S.W.3d 378, 381 (Tex.App.-San Antonio 1999, no pet.). The language, therefore, fails to raise a fact issue as to whether the parties intended to be bound under the terms of the MSA.

### *Terms of the Mediated Settlement Agreement*

A mediated settlement agreement is enforceable in the same manner as any other contract. TEX. CIV. PRAC. & REM. CODE ANN. § 154.071(a)(Vernon 1997); *Hardman*, 2 S.W.3d at 380. An agreement is enforceable if it is "complete within itself in every material detail, and ... contains all of the essential elements of the

---

**2.** Rather than referring to the formation of the contract, this language refers to performance of one of the contract's terms by San Felipe. Under the contract, San Felipe was to provide Castano with water for her pond "subject to" the pond being able to hold water, approval by the Texas Natural Resource Conservation Commission, and Castano's purchase of insurance.

agreement." *Padilla v. LaFrance,* 907 S.W.2d 454, 460 (Tex.1995); *Hardman,* 2 S.W.3d at 380. The intent of the parties to be bound is an essential element of an enforceable contract. *Hardman,* 2 S.W.3d at 380. Although this intent is often a question of fact, where that intent is clear and unambiguous on the face of the agreement, it may be determined as a matter of law. *Id.* As stated above, the intent of the parties to be bound is evident from the wording and context of the MSA. The only question remaining has to do with the applicable terms of the contract.

■ There are not, as Castano suggests, four different versions of the mediated settlement agreement. The record shows two versions of the agreement attached to San Felipe's motion for summary judgment. The first version of the MSA ("V1") is partially typed and partially handwritten. It appears to be the working version of the agreement used at the actual mediation. The second version of the agreement attached to the motion for summary judgment ("V2") is substantially the same as V1, with a few modifications and additional terms.[3] It is a completely typed document, an attempt to finalize and formalize the agreement formed at the mediation. Castano argues that what appear to be three of the last four pages of V2, one of which includes a signature page containing Castano's signature, are confusingly added on in an attempt to "convince the trial court that Ms. Castano had signed Version 2 when she did not." However, a cursory reading of the documents makes it clear that these three pages were mistakenly inserted in the middle of V2 rather than at the end of V1 where they belong. The

original mediation agreement, V1, then, is a written and signed agreement, complete within itself in every material detail, and containing all of the essential elements of the agreement, including the amount of compensation to be paid to Castano, the release of liabilities of both parties, and promises to perform by both parties. *See Padilla,* 907 S.W.2d at 460.

Castano also contends that there are two other versions of the settlement agreement. According to Castano, the third version ("V3") is attached to the trial court's summary judgment order and the fourth version ("V4") is the trial court's "partial" incorporation of the elements included in V3. The alleged V3 is simply the original MSA, a complete and unseparated draft of V1, presumably contemplated and signed at the mediation. The order supposedly constitutes a fourth version because it addresses issues raised in both V1 and V2.

As stated above, V1/V3 is a written document, complete within itself in every material detail, containing all of the essential elements of the agreement, and signed by the parties to the agreement. V2 is not signed by Castano and contains additional or modified terms. Under the law governing contracts, we find V1/V3 to be an enforceable contract; Castano is, therefore, bound by its terms. *See Padilla,* 907 S.W.2d at 460. She is not, however, bound by any substantive additions or modifications made in V2. For that reason, we must compare the trial court's summary judgment order to the language used in the enforceable MSA.

Specifically, Castano complains of five additions or modifications in the trial

---

3. The typed and formalized document contains a few additional terms. For example, it contains more extensive wording pertaining to the mutual agreement to "release, discharge, and forever hold [each] other harm-

less from any and all claims, demands, or suits" and a formal reference to the creation of an easement under the terms of the document.

court's order: (1) the deletion of the provision regarding Castano's indemnification of San Felipe from damages as a result of leakage or seepage from the pond; (2) the deletion of provisions concerning dismissal of Castano's appeal, the purchase of insurance prior to San Felipe providing Castano with water, the delivery of drafts within 14 days of the mediation, and the confidentiality of the agreement; (3) the addition of language stating "upon final completion of the new lateral [San Felipe] has and shall have an easement across [Castano's] land at the location of the new lateral and within a reasonable distance thereof as future circumstances require"; (4) the addition of extensive language regarding the mutual release of liabilities; and (5) the award of attorney's fees and conditional appellate attorney's fees.

With regard to the alleged deletions, contrary to Castano's contentions, the trial court's summary judgment order does, in fact, contain reference to the indemnification and the dismissal of her appeal. Additionally, although not expressly stated, it is implied from the context of the document that the insurance must be in place before San Felipe will provide water to Castano. The reference to the delivery of further document drafts is moot, because more than 14 days had passed since the mediation at the time the trial court signed its order.

█ In addition, the modifications made to the agreement are not substantive. The acknowledgment of the easement that would already exist under law is a formality, and the release language in the judgment mirrors the release language in the MSA, adding the parties' names and repeating the language more than once. Moreover, the confidentiality language has been mooted by the filing of the agreement among the papers in this lawsuit. Finally, the award of attorney's fees, although not in V1/V3, was well within the trial court's discretion once it granted San Felipe's summary judgment. *See Ragsdale v. Progressive Voters League,* 801 S.W.2d 880, 881 (Tex.1990).

The parties' intent to be bound is evident in this case. There is no genuine issue of material fact as to this intent. We overrule this portion of Castano's first issue, affirming the judgment of the trial court.[4]

### Castano's Breach of the Mediated Settlement Agreement

Castano also argues that there is a genuine issue of material fact regarding her alleged breach of the MSA and that San Felipe failed to prove, as a matter of law, that she did, indeed, breach the agreement. In its motion for summary judgment, San Felipe claimed that an agreement was reached at mediation and that the agreement was signed by Castano and her attorney, as well as San Felipe and its attorney. San Felipe also claimed that its counsel prepared the finalized version of the MSA along with a complete mutual release and delivered the document along with a cashier's check for the agreed upon amount to Castano. Castano subsequently refused to perform as agreed under the terms of the MSA, thereby breaching the agreement. San Felipe attached two affidavits and a copy of the complete and signed MSA to its motion. The affidavits submitted by San Felipe, those of Michael Stool, representative of San Felipe, and Richard Pullman, attorney for San Felipe, stated that each man was present at the mediation, that a settlement was reached at mediation, and that a settlement agree-

---

4. Because we have determined the MSA is a valid and enforceable contract, we do not need to reach the issue of its validity as a Rule 11 agreement.

ment was signed by all parties, including Castano, San Felipe, and each of their respective attorneys.

In Castano's response to the motion, she included an affidavit which alleged that she signed the MSA under duress because her attorney was threatening to withdraw if she failed to sign and because she was caring for her ill mother at the time of the mediation. Her affidavit also asserted that San Felipe had not performed "in a timely basis" and failed to keep the agreement confidential. Finally, Castano claimed that she had not been paid for mental anguish claims and had no "active participation" in the drafting of the final agreement. On appeal, Castano argues that San Felipe failed to establish as a matter of law (1) the existence of an enforceable contract and (2) a breach by Castano of that contract. As stated above, a valid and enforceable contract did exist between the two parties. We now address the issue of Castano's breach.

In its motion for summary judgment San Felipe offered proof of the existence of the contract, as well as proof that Castano failed to abide by the agreed to terms of the contract. Castano's response to the motion does not offer any viable proof to the contrary. Therefore, she has failed to raise a genuine issue of material fact as to whether or not she breached the contract and, in fact, appears to merely offer the reasons for her breach. We overrule the portion of Castano's first issue regarding her breach of the MSA.

### Arbitration Award

Finally, Castano contends that because there is no enforceable agreement between the parties, there is no reason for them to be bound to arbitration, and the order confirming the arbitration award should be reversed. Because we have found there to be an enforceable agreement between Cas-

tano and San Felipe, thereby negating any argument Castano raises against the validity of the agreed upon arbitration, we do not need to address this issue.

Castano's first issue is overruled.

### MOTION TO DISQUALIFY

In her third issue, Castano argues that the court's failure to consider her motions to disqualify Judge Lee prior to the hearings on both motions for summary judgment, as well as the hearing on her son's petition in intervention was an abuse of discretion, and, as such, all orders signed by Judge Lee should be void. The procedure for the disqualification and recusal of judges is set out in Texas Rule of Civil Procedure 18a. TEX.R. CIV. P. 18a. The rule requires that a motion to recuse or disqualify shall be filed at least ten days before the date set for trial or other hearing, that the motion shall be verified, and that the motion must state with particularity the grounds why the judge before whom the case is pending should not sit. *Id.*

The record refutes Castano's argument that her first "Motion to Recuse and Motion to Disqualify" was not referred to an administrative judge. The record contains a notice setting the hearing date for this motion on May 7, 2001, as well as an order denying the motion. Castano's second "Motion to Disqualify" Judge Lee was filed on June 4, 2001, the same day as the hearing on San Felipe's motion to confirm the arbitration award. As stated above, under Texas Rule of Civil Procedure 18a, a motion for recusal or disqualification must be filed at least ten days prior to the date set for trial or hearing. TEX.R. CIV. P. 18a(a). Under the Rules of Civil Procedure, then, Castano's second motion was invalid.

We overrule Castano's third issue.

### Stone and Bolner's Motion For Summary Judgment

In her fourth issue, Castano contests the trial court's granting summary judgment in favor of Stone and Bolner. She also asserts, in her second issue, that the award of attorney's fees in the summary judgment order constitutes an abuse of discretion. We follow the traditional standards of review when reviewing a summary judgment granted on the basis of deficient pleadings, reviewing the pleadings de novo, taking all allegations, facts, and inferences in the pleadings as true and viewing them in the light most favorable to the pleader. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994); *Ryan v. Friesenhahn*, 911 S.W.2d 113, 116 (Tex. App.-San Antonio 1995, writ granted), *aff'd*, 960 S.W.2d 656 (Tex.1998).

On appeal, Castano argues that the trial court erred in granting summary judgment in favor of Stone and Bolner because the motion "did not prove that [her] claims should be dismissed as a matter of law" or disprove any of the elements of her numerous causes of action against them. Castano goes on to argue that Stone and Bolner should have filed special exceptions, rather than a motion for summary judgment, if they were unclear about the allegations made. It is well settled that the issue of whether pleadings fail to state a cause of action may not be resolved by summary judgment. *In the Interest of B.I.V.*, 870 S.W.2d 12, 13–14 (Tex.1994); *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983); *Ryan*, 911 S.W.2d at 115–16. Only after a party has been given the opportunity to amend may the case be dismissed for failure to state a cause of action. *Massey*, 652 S.W.2d at 934.

Reviewing Castano's pleading de novo, we find that she has, indeed, failed to state a cause of action against either Stone or Bolner. The record shows that Castano's original petition alleges that her property was used to provide irrigation to service to both J.M. Stone and David Bolner, resulting in alleged trespass and alleged intentional infliction of emotional distress. A trespasser is one who, without having title thereto, makes entry upon land without consent of the true owner. *McDaniel Bros. v. Wilson*, 70 S.W.2d 618, 621 (Tex.Civ.App.-Beaumont 1934, writ ref'd). Every unauthorized entry upon land is a trespass even if no damage is done. *Id.* In addition, in order to recover for the tort of intentional infliction of emotional distress, the plaintiff must prove the following four elements: 1) the defendant acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the emotional distress suffered by the plaintiff was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993). Castano fails to specifically plead any of the elements of either trespass or intentional infliction of emotional distress against Stone and Bolner or to describe any actions committed by these appellees which might be construed as meeting the requisite elements.

Stone and Bolner filed their motion for summary judgment, arguing that Castano's petition failed to state a cause of action against them. As stated above, this issue may not be resolved by summary judgment without giving the plaintiff an opportunity to replead. *See Massey*, 652 S.W.2d at 934. Although neither Stone nor Bolner filed a document denominated as special exceptions, they claim in their brief to have filed a document entitled "Motion for Order to Require Plaintiff to Make a More Definite Statement Pleading the Specific Acts Alleged as Grounds for a Recovery Against These Said Defendants." Although a copy of this motion is attached to their appellate brief, it is not a part of

the appellate record. Consequently, we are precluded from addressing the merits or effect of this document. We cannot consider documents attached to an appellate brief that do not appear in the record. *K–Six Television, Inc. v. Santiago*, 75 S.W.3d 91, 97 (Tex.App.-San Antonio 2002, no pet.); *Till v. Thomas*, 10 S.W.3d 730, 733 (Tex.App.-Houston [1st Dist.] 1999, no pet.). This Court must hear and determine a case on the record as filed, and may not consider documents attached as exhibits to briefs. *Till*, 10 S.W.3d at 733.

 But even if we were to consider Stone and Bolner's motion for a more definite statement of the causes of action alleged against them to be in the nature of special exceptions, the document still falls short of the standard required under the Texas Rules of Civil Procedure. In their motion, Stone and Bolner argue that Castano's pleadings were "vague and ambiguous" so that they were not able to "frame a responsive pleading" or "properly prepare a defense." They also argue that the pleadings failed to identify the actions which formed the basis of any liability asserted against them and requested a more definite statement regarding the complaints.

In spite of the motion's title, it appears intended to serve the same purpose as special exceptions. Under Texas Rule of Procedure 91, special exceptions must identify the pleading excepted to, stating the "defect, omission, obscurity, duplicity, generality, or other insufficiency in the allegations" with particularity. Tex.R. Civ. P. 91. The motion, however, fails to state with specificity the elements lacking in Castano's petition. Instead, the motion serves as a general demurrer which is prohibited under the rules. Tex.R. Civ. P. 90; *Spillman v. Simkins*, 757 S.W.2d 166, 168 (Tex.App.-San Antonio 1988, no writ).

The motion, as filed, not only runs afoul of Texas Rule of Civil Procedure 90, but, if allowed, it would also permit the appellees to circumvent the protective features of the special exception procedure. *Centennial Ins. Co. v. Comm. Union Ins. Cos.*, 803 S.W.2d 479, 482 (Tex.App.-Houston [14th Dist.] 1991, no writ).

For these reasons, we sustain Castano's second issue. Consequently, we also sustain Castano's fourth issue, regarding the award of attorney's fees associated with Stone and Bolner's motion for summary judgment. The summary judgment as to Stone and Bolner is reversed and the cause is remanded for further proceedings.