NO. 07-04-0554-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



DECEMBER 12, 2005


______________________________



JOHN SCOTT and HAZEL SCOTT, 



 Appellants


v.



HOLLY SIMPSON and LENIS SIMPSON, 



 Appellees

_________________________________



FROM THE COUNTY COURT AT LAW NO. 1 OF POTTER COUNTY;



NO. 90,963-1; HON. W. F. ROBERTS, PRESIDING


_______________________________



Memorandum Opinion


_______________________________



Before QUINN, C.J., and REAVIS and HANCOCK, JJ.

 John and Hazel Scott (the Scotts), acting pro se, appeal from a judgment awarding
Holly and Lenis Simpson (the Simpsons) $10,674.67 plus attorney's fees of $3,500.00. 
The judgment was entered upon trial at which the Scotts failed to appear. They seek
reversal because they 1) received no notice of the trial date, and 2) did not breach their
contract with the Simpsons or commit fraud or deceptive trade practices. We affirm the
judgment of the trial court.


 Regarding the contention that they did not receive notice of the trial setting, no
evidence of record illustrates as much. And, though the allegation was made in the motion
for new trial filed by the Scotts, the motion was neither verified nor accompanied by a
supporting affidavit. Nor do the allegations contained in the Scotts' appellate brief fill the
void; factual statements and documents appearing only in the appellate brief are not
evidence upon which this court may act. See Castano v. San Felipe Agricultural, Mfg. &
Irr. Co., 147 S.W.3d 444, 452-53 (Tex. App.-San Antonio 2004, no pet.) (stating that an
appellate court may not consider evidence included in or attached to briefs that is not part
of the official record developed at trial); Custom-Crete, Inc. v. K-Bar Services, Inc., 82
S.W.3d 655, 659 (Tex. App.-San Antonio 2002, no pet.) (stating that one contending he
received no notice of the trial date must produce evidence, not simply allegation, to support
the contention). Indeed, we are limited to reviewing only that competent evidence
presented to and admitted by the trial court. See Castano v. San Felipe Agricultural, Mfg.
& Irr. Co., 147 S.W.3d at 452-53. Thus, the allegation that the Scotts received no notice
of the trial date is unsubstantiated and overruled.

 Regarding the other issues raised by the Scotts, they appear as little more than
effort to attack the sufficiency of the evidence underlying the trial court's finding of liability,
which the Scotts do simply by asserting factual allegations in and attaching documents to
their appellate brief. Again, such are not competent evidence upon which we can act since
they are not part of the appellate record. Id. Nor do we have a reporter's record of the trial
or documentation within the appellate record illustrating that the Scotts requested it. (1) This
is fatal since the Scotts had the burden to provide us with a record sufficient to support their
contentions and establish the need for reversal. Pentes Design, Inc. v. Perez, 840 S.W.2d
75, 79 (Tex. App. -Corpus Christi 1992, writ denied). Without the reporter's record, we can
only presume that the trial court had sufficient evidence before it to support its decision. 
Vickery v. Commission for Lawyer Discipline, 5 S.W.3d 241, 251 (Tex. App.-Houston [14th
Dist.] 1999, pet. denied) (holding that when there is neither a reporter's record nor findings
of fact, the appellate court will assume the trial court heard sufficient evidence to make all
the necessary findings to support the judgment). Thus, we overrule these issues as well.

 The judgment of the trial court is affirmed.


 Per Curiam 


 






1. The Scotts do assert in their brief that they were told by the reporter that no record of the trial was
made. Yet, they do not contend that the trial court heard no evidence at the proceeding. Nor does the record
establish that the trial court heard no evidence. See Tex. R. Civ. P. 243 (stating that if the damages are
unliquidated, then the trial court "shall hear evidence as to damages . . . unless the defendant shall demand
and be entitled to a trial by jury . . ."). 


ce officer mentioned that he
wondered if appellant was drunk, the trial court, like that in Corbin, could have discounted
this reason for turning to investigate (given its authority to weigh the evidence and resolve
conflicts therein) and instead concluded that the officer was primarily motivated by a desire
to investigate whether appellant needed help. Id. Indeed, the officer testified that upon
turning around, he engaged his emergency lights to prevent vehicles from colliding with
appellant. That is some evidence from which it reasonably could be inferred that
appellant's safety, and that of others on the road, was foremost in the policeman's mind. 
 Additionally, our Court of Criminal Appeals has stated that "it certainly would be
reasonable for a police officer to stop an individual who appears to be falling asleep while
driving." Id. at 278. And, that appears to be the very scenario that unfolded before
Johnson. Again, appellant's head was cocked to the side, his mouth was open and his
eyes were closed while stopped at a green light. Moreover, that he swerved to and fro and
failed (for whatever reason) to respond to the officer's emergency lights and siren lends
further support to the inference that appellant may have been suffering from some mental
or physical impairment or may have been lapsing into and out of consciousness. Indeed,
it is difficult to be unaware of the glare of flashing emergency lights atop a police car at
night or the sound of a siren unless some condition restricts an individual from perceiving
them. Thus, there exists some evidence of record upon which the trial court could have
reasonably found that the nature and level of distress being exhibited by appellant was
relatively high. We couple this to the facts that he was alone in the car while driving on a
public road within city boundaries and through a residential area. And, upon so combining
the evidence, we encounter basis upon which the officer could have deduced that
appellant posed a danger to himself and no one else was available to help him. 

 In short, the record contains evidence permitting the trial court to reasonably
conclude that factors mentioned in Corbin authorized Johnson's intervention as part of his
caretaking function. More importantly, the very same evidence authorizing the intervention
also gives rise to another basis upon which the trial court could have denied the motion to
suppress. It involves a convergence of the caretaking function and probable cause to
arrest. Again, we have no doubt that the initial circumstances unfolding before the officer
allowed him to stop appellant to investigate whether he needed help. So, Johnson was
justified in activating his emergency lights and siren to effectuate the stop. In turn, that
appellant failed to comply and stop evinces criminal activity. Simply put, one is obligated
to stop once an officer has signaled for him to do so. Winter v. State, 902 S.W.2d 571,
573-74 (Tex. App.-Houston [1st Dist.] 1995, no pet.). Failing to comply with the directive
gives rise to probable cause to arrest the person. Martinez v. State, 644 S.W.2d 104, 108-09 (Tex. App.-San Antonio 1982, no writ). So, the trial court could have also reasonably
concluded that Officer Johnson had probable cause to seize appellant once appellant did
stop. 

 In sum, the evidence of record supports several theories upon which the trial court
could have legitimately decided to deny appellant's motion to suppress. Because it does,
we overrule the sole issue before us and affirm the judgment of the trial court.


 Brian Quinn 

 Justice


Do not publish.