GILBERT V. GM CORP.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-05-243-CV

BRENT GILBERT APPELLANT

V.

GENERAL MOTORS CORPORATION APPELLEES

AND JERRY’S CHEVROLET

------------

FROM THE 43RD DISTRICT COURT OF PARKER COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

Appellant Brent Gilbert appeals from the trial court’s granting of a no-evidence summary judgment in favor of Appellees General Motors Corporation (GM) and Jerry’s Chevrolet.  We affirm in part and reverse and remand in part.

II. Background

Gilbert purchased a 2002 Chevrolet Silverado pickup truck from Jerry’s Chevrolet in March 2002.  In September 2003, Gilbert filed suit against GM and Jerry’s Chevrolet, alleging causes of action for violations of the Deceptive Trade Practices Act (DTPA), violations of the occupations code,
(footnote: 2) breach of contract, and breach of warranty.  Gilbert alleged that soon after his purchase, he began experiencing a litany of problems with the truck, including trouble with the driver’s rear door, the settings for the driver’s seat, the driver’s seat heater, the lumbar cushion, the transmission, the front end alignment, the tires, and the engine.  Gilbert alleged that he took the truck to Jerry’s Chevrolet numerous times, but the problems were not repaired.  Further, Gilbert alleged that after the truck had been driven only about 26,000 miles, the motor had to be replaced, yet the dealership concluded that the vehicle had been submerged and, therefore, Gilbert lost his warranty on the truck.  Jerry’s Chevrolet also refused a re-purchase agreement.  GM and Jerry’s Chevrolet filed a no-evidence motion for summary judgment in which they argued that there was no evidence to support certain elements of Gilbert’s DTPA, breach of contract, and breach of warranty claims.  The motion did not address Gilbert’s occupations code claims.  Gilbert filed a response supported by his affidavit and several other exhibits.

The trial court granted the motion on May 5, 2005.  The court’s order granting the motion stated in full:

[caption]

ORDER GRANTING DEFENDANTS GENERAL MOTORS CORPORATION AND JERRY’S CHEVROLET’S NO EVIDENCE MOTION FOR SUMMARY 
JUDGMENT AND FINAL JUDGMENT

On this day the Court considered Defendants General Motors Corporation and Jerry’s Chevrolet’s No Evidence Motions for Summary Judgment.  The Court considered the Motion, the Plaintiff’s response, if any, the arguments of the parties, and the admissible summary judgment evidence, and is of the opinion that the Motion is well taken and should be GRANTED and that an appropriate Order should be entered.

It is, therefore, 
ORDERED
 that:

(1) Defendants General Motors Corporation and Jerry’s Chevrolet’s No Evidence Motion for Summary Judgment is GRANTED;

(2) Plaintiff TAKE NOTHING from Defendants General Motors Corporation and Jerry’s Chevrolet;

(3) All costs of court are taxed against the Plaintiff;

(4) All relief not provided for herein is expressly denied.

SIGNED
 this 
5
 day of 
May
, 2005.

/s/____________________

    JUDGE PRESIDING

This appeal followed.

In his sole point, Gilbert contends that the trial court erred in granting GM’s and Jerry’s Chevrolet’s no-evidence motion for summary judgment.
(footnote: 3)
III. Finality of Judgment

Although the parties have not questioned finality, it is a matter essential to our jurisdiction that we must notice on our own motion.  
See N.Y. Underwriters Ins. Co. v. Sanchez
, 799 S.W.2d 677, 679 (Tex. 1990).  In general, an appeal may be taken only from a final judgment.  
Lehmann v. Har-Con Corp.
, 39 S.W.3d 191, 195 (Tex. 2001).  Absent a conventional trial on the merits, a judgment is final “if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties.”  
Id. 
at 192-93.  The language of an order or judgment, therefore, can make it final, even though it should have been interlocutory, if that language expressly disposes of all claims and all parties.  
Id. 
at 200.  It is not enough that the order or judgment merely use the word “final,” however.  
Id.
  The intent to finally dispose of the case must be unequivocally expressed in the words of the order itself.  
Id.  
But if that intent is clear from the order, then the order is final and appealable, even though the record does not provide an adequate basis for rendition of judgment.  
Id.
  Granting more relief than necessary makes the order reversible but not interlocutory.  
Id. 
at 204.  For example, if a defendant moves for summary judgment on only one of four claims asserted by the plaintiff, but the trial court renders judgment that the plaintiff take nothing on all claims asserted, the judgment is final, albeit erroneous.  
Id. 
at 200.

In this case, the pertinent language of the order reads, “Plaintiff TAKE NOTHING from Defendants General Motors Corporation and Jerry’s Chevrolet.” The supreme court has stated that language that the plaintiff take nothing by his claims in the case shows finality if there are no other claims by other parties.  
Id. 
at 205.  Here, there were no claims by any plaintiffs other than Gilbert.  GM and Jerry’s Chevrolet were the only defendants, and there were no claims by either of them.  Therefore, we conclude that although GM and Jerry’s Chevrolet had not moved for summary judgment on Gilbert’s occupations code claims, the trial court effectively rendered judgment that Gilbert take nothing on 
all
 his claims.  Thus, the judgment is final for purposes of appeal.  
See Aguilar v. LVDVD
,
 L.C.
, No. 08-01-00438-CV, 2002 WL 1732520, at *9 (Tex. App.—El Paso July 25, 2002, pet. denied) (not designated for publication) (holding order granting summary judgment that disposed of all claims was final and appealable because “take nothing” language used in the order was sufficient to meet the “unmistakable clarity” standard of 
Lehmann
); 
Hodde v. Portanova
, No. 14-99-00656-CV, 2001 WL 224940, at *1 (Tex. App.—Houston [14th Dist.] Mar. 8, 2001, no pet.) (not designated for publication) (holding language “take nothing by their action” equivalent to the language 
Lehmann 
used to illustrate finality; therefore, judgment was final for purposes of appeal).

IV. Gilbert’s Occupations Code Claims

Having concluded that the trial court effectively rendered judgment that Gilbert take nothing on 
all
 his claims, we must next address whether the trial court had jurisdiction to dispose of Gilbert’s occupations code claims in favor of GM and Jerry’s Chevrolet.  
See Tex. Ass’n of Bus. v. Tex. Air Control Bd.
, 852 S.W.2d 440, 445-46 (Tex. 1993) (holding that it is appropriate for reviewing court to raise 
sua sponte 
issue of lower court’s subject matter jurisdiction).

Texas Occupations Code section 2301.151 states,

(a) The board has the exclusive original jurisdiction to regulate those aspects of the distribution, sale, or lease of motor vehicles that are governed by this chapter, including the original jurisdiction to determine its own jurisdiction.

(b) The board may take any action that is specifically designated or implied under this chapter or that is necessary or convenient to the exercise of the power and jurisdiction granted under Subsection (a).

Tex. Occ. Code Ann. 
§ 2301.151 (Vernon 2004); 
see also Subaru of Am.
,
 Inc. v. David McDavid Nissan
,
 Inc.
, 84 S.W.3d 212, 223 (Tex. 2002) (holding that the board has exclusive jurisdiction over claims and issues the code governs).  Thus, before the trial court has jurisdiction over a party’s code-based claims, the party must first exhaust administrative remedies to obtain a board decision about code violations, if any, to support the claims.  
See Subaru of Am.
,
 Inc.
, 84 S.W.3d at 224, 228.

Here, Gilbert has not exhausted his administrative remedies and obtained final board findings about any code violations that support his code-based claims.  Therefore, we hold that the trial court erred in granting summary judgment on Gilbert’s occupations code claims in favor of GM and Jerry’s Chevrolet because those claims are not yet within the trial court’s jurisdiction.  We reverse and remand the claims to the trial court with instructions that the trial court abate its proceedings until Gilbert exhausts his administrative remedies.  
See id
.
 at 228.

V.
 
Gilbert’s Remaining Claims

A. Standard of Review
(footnote: 4)
 After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant’s claim or defense.  
Tex. R. Civ. P.
 166a(i).  The motion must specifically state the elements for which there is no evidence.  
Id.
;
 Johnson v. Brewer & Pritchard
,
 P.C.
,
 
73 S.W.3d 193, 207 (Tex. 2002).  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.  
See
 
Tex. R. Civ. P.
 166a(i) & cmt.; 
Sw. Elec. Power Co. v. Grant
, 73 S.W.3d 211, 215 (Tex. 2002). We review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered.  
King Ranch
,
 Inc. v. Chapman
, 118 S.W.3d 742, 751 (Tex. 2003), 
cert. denied
, 541 U.S. 1030 (2004); 
Johnson
, 73 S.W.3d at 197; 
Morgan v. Anthony
, 27 S.W.3d 928, 929 (Tex. 2000).  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.  
Moore v. K Mart Corp.
, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).

B. Summary Judgment Evidence

As previously stated, GM’s and Jerry’s Chevrolet’s no-evidence motion for summary judgment challenged whether there is evidence to support certain elements of Gilbert’s DTPA, breach of contract, and breach of warranty claims. In response, Gilbert attached his own affidavit, as well as several documents that had been produced by him to GM and Jerry’s Chevrolet in response to discovery requests.  Further, Gilbert refers us to several additional documents that he has attached to his brief.

First, we cannot consider documents attached to an appellate brief that do not appear in the record.  
Castano v. San Felipe Agric.
,
 Mfg.
,
 & Irrigation Co.
, 147 S.W.3d 444, 453 (Tex. App.—San Antonio 2004, no pet.);
 Till v. Thomas
, 10 S.W.3d 730, 733 (Tex. App.—Houston [1st Dist.] 1999, no pet.).  This court must hear and determine a case based on the record as filed and may not consider documents attached as exhibits to briefs.  
Till
, 10 S.W.3d at 733.   Second, documents submitted as summary judgment proof must be sworn to or certified.  
Tex. R. Civ. P.
 166a(f); 
Medford v. Medford
, 68 S.W.3d 242, 246 (Tex. App.—Fort Worth 2002, no pet.); 
Llopa
,
 Inc. v. Nagel
, 956 S.W.2d 82, 87 (Tex. App.—San Antonio 1997, pet. denied).  Unauthenticated or unsworn documents, or documents not supported by any affidavit, are not entitled to consideration as summary judgment evidence.  
Medford
, 68 S.W.3d at 247; 
Llopa
,
 Inc.
, 956 S.W.2d at 87.

Here, all of the documents attached to Gilbert’s summary judgment response, except for his affidavit, are unauthenticated.  Although Gilbert’s affidavit mentions some of the other attached documents, the affidavit makes no attempt whatsoever to authenticate the documents.  
Cf. Republic Nat’l Leasing Corp. v. Schindler
, 717 S.W.2d 606, 607 (Tex. 1986) (holding trial court correct in considering documents attached to properly prepared affidavit when affidavit stated attached documents were true and correct copies of originals).  Neither were the documents self-authenticating.  All of the documents attached to Gilbert’s summary judgment response, except for his affidavit, were produced 
by him 
to GM and Jerry’s Chevrolet in response to discovery requests.  A party cannot authenticate a document for use in its own favor by merely producing it in response to a discovery request.  
Blanche v. First Nationwide Mortgage Corp.
, 74 S.W.3d 444, 452 (Tex. App.—Dallas 2002, no pet.).

Thus, we are left with Gilbert’s affidavit as the only competent summary judgment evidence before the trial court.
(footnote: 5)  We now turn to the issue of whether Gilbert’s affidavit constitutes more than a scintilla of evidence on the elements challenged by GM and Jerry’s Chevrolet.
(footnote: 6)
 C. DTPA Claims

To maintain a cause of action under the DTPA, a plaintiff must establish the following:  (1) the plaintiff was a consumer; (2) the defendant committed a “laundry-list” violation under DTPA section 17.46(b) on which the plaintiff detrimentally relied, breached an express or implied warranty, or engaged in any unconscionable action or course of action; and (3) the wrongful act was a producing cause of the plaintiff’s damages.  
Wall v. Parkway Chevrolet
,
 Inc.
, 176 S.W.3d 98, 105 (Tex. App.—Houston [1st Dist.] 2004, no pet.); 
see 
Tex. Bus. & Com. Code Ann.
 §§ 17.46(b), 17.50(a) (Vernon Supp. 2005).

In his original petition, Gilbert specifically alleged that GM and Jerry’s Chevrolet engaged in an unconscionable action or course of action under the DTPA and committed three laundry-list violations under DTPA section 17.46(b):  (1) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not, 
see
 
Tex. Bus. & Com. Code Ann.
 § 17.46(b)(5); (2) representing that goods or services are a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another, 
see
 
id
. § 17.46(b)(7); and (3) failing to disclose information about goods or services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer into a transaction that the consumer would not have entered into had the information been disclosed, 
see
 
id
. § 17.46(b)(24).  Moreover, Gilbert alleged that GM and Jerry’s Chevrolet acted intentionally.

1. Unconscionability Claim

Regarding Gilbert’s unconscionability claim, GM and Jerry’s Chevrolet challenged whether there is evidence that they acted unconscionably or that any act or practice attributable to them was the producing cause of any damages.  Considering Gilbert’s affidavit in conjunction with the elements required for an unconscionability claim under the DTPA, and viewing that evidence in the light most favorable to Gilbert, we conclude that Gilbert brought forward more than a scintilla of probative evidence that raises a genuine issue of material fact on each element of this cause of action.

To prove unconscionability under the DTPA, a plaintiff must prove an act or practice which, to a consumer’s detriment, takes advantage of his lack of knowledge, ability, experience, or capacity to a grossly unfair degree.  
See id
.
 § 17.45(5) (Vernon 2002).  Here, Gilbert’s affidavit states that he purchased a new pickup truck and an extended service agreement from Jerry’s Chevrolet in March of 2002; however, only twenty-seven days later, he began experiencing problems with the truck.  From April through September of 2002, he repeatedly took the truck in for service, yet none of the problems were corrected.  Gilbert stated that instead, GM and Jerry’s Chevrolet misstated the reasons his vehicle was brought in for service, ignored mechanical defects, and told him that nothing was found wrong with the vehicle.  Finally, after the truck had been driven only about 26,000 miles, the engine had to be replaced, and the service department claimed that the vehicle had been “submerged” and, therefore, wrongfully revoked his extended service agreement.

Viewed in the light most favorable to Gilbert, we hold that this evidence raises a fact issue about whether GM and Jerry’s Chevrolet engaged in an unconscionable action or course of action and whether the act was a producing cause of Gilbert’s damages; therefore, we hold that Gilbert’s affidavit is sufficient to raise an issue of fact regarding his unconscionability claim.  The trial court improperly granted summary judgment on this claim.

2. Laundry-List Violations

Regarding Gilbert’s laundry-list claims, GM and Jerry’s Chevrolet challenged whether there is evidence that they engaged in a false, misleading, or deceptive act or practice, that Gilbert detrimentally relied on any act or practice, or that any act or practice was a producing cause of any damages. First, we will discuss Gilbert’s failure to disclose claim.  Under the DTPA, the term “false, misleading, or deceptive acts or practices” includes “failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into 
a transaction into which the consumer would not have entered had the information been disclosed
.”  
Id
. § 17.46(b)(24) (emphasis added).  The term “transaction” contemplates an act or acts whereby an alteration of legal rights occur.  
Doe v. Boys Clubs of Greater Dallas
,
 Inc.
, 868 S.W.2d 942, 954 (Tex. App.—Amarillo 1994), 
aff’d
, 907 S.W.2d 472 (Tex. 1995).

Here, Gilbert’s affidavit states that GM and Jerry’s Chevrolet failed to disclose the vehicle’s defective status to him with the intent of inducing him into keeping the vehicle.  However, merely keeping the vehicle is not a transaction.  
See
,
 e.g.
,
 Bradford v. Vento
, 48 S.W.3d 749, 760 (Tex. 2001) (holding no evidence of any transaction between shopping mall manager and buyer of mall store where buyer had already purchased store at time he discussed possibility of long-term lease with manager, rent he paid was due under existing lease, and buyer and manager did not negotiate a new lease).  Consequently, we hold that Gilbert’s affidavit is not sufficient to raise an issue of fact on each element of Gilbert’s claim for failure to disclose.  
See 
Tex. Bus. & Com. Code Ann.
 § 17.46(b)(24).
  Therefore, the trial court properly granted summary judgment on this claim.

On the other hand, we conclude that Gilbert brought forward more than a scintilla of probative evidence that raises a genuine issue of material fact as to each element of his claims that GM and Jerry’s Chevrolet represented that the truck had characteristics and uses that it did not have and that they represented that the truck was a particular standard or quality when it was not.  Gilbert’s affidavit states that GM and Jerry’s Chevrolet made misrepresentations that his pickup truck was a new, safe, and reliable vehicle when, in fact, it was defective as evidenced by the litany of problems for which he took it in for service during the months of April through September of 2002. The problems included, but were not limited to, “wind noise in the driver’s side rear door, driver’s seat not holding settings and reclining while vehicle is in use, driver’s seat heater inoperable, engine top-end knocking, lumbar cushion airing up on its own while vehicle in use, transmission slipping, and incorrect tire alignment.”  Furthermore, Gilbert’s affidavit states that when the vehicle was returned to him after servicing, he was told that nothing was found wrong with it when, according to Gilbert, the vehicle was defective.  This evidence raises a fact issue about whether GM and Jerry’s Chevrolet represented that the truck had characteristics and uses that it did not have and whether they represented that the truck was a particular standard or quality when it was not.  
See id
. § 17.46(b)(5), (7).

Moreover, Gilbert’s affidavit states that he relied to his detriment on GM’s and Jerry’s Chevrolet’s representations, causing him to suffer damages, because, among other things, he kept the vehicle and continued to make payments toward the balance owed on the note and he took time off work and lost wages in order to deal with the problems he was experiencing with the truck.  Therefore, a fact issue is raised as to whether Gilbert detrimentally relied on any false, misleading, or deceptive act or practice by GM and Jerry’s Chevrolet and whether any act or practice was a producing cause of damages. 

Consequently, we hold that Gilbert’s affidavit is sufficient to raise an issue of fact regarding his misrepresentation claims.  
See id
.
  Therefore, the trial court improperly granted summary judgment on these claims.

3. Intent

Finally, GM and Jerry’s Chevrolet also challenged whether there is evidence that they acted intentionally, as alleged in Gilbert’s original petition. 
Section 17.45 of the DTPA defines “intentionally” as

actual awareness of the falsity, deception, or unfairness of the act or practice . . . giving rise to the consumer’s claim, coupled with the specific intent that the consumer act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.  Intention may be inferred from objective manifestations that indicate that the person acted intentionally or from facts showing that a defendant acted with flagrant disregard of prudent and fair business practices to the extent that the defendant should be treated as having acted intentionally.

Id.
 § 17.45(13).  Viewed in the light most favorable to Gilbert, we hold that the affidavit as discussed above raises a fact issue about whether GM and Jerry’s Chevrolet acted intentionally.  Thus, the trial court improperly granted summary judgment as to this claim.

D. Breach of Contract Claim

In order to prove a breach of contract, a plaintiff must demonstrate the following:  (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.  
Sullivan v. Smith
, 110 S.W.3d 545, 546 (Tex. App.—Beaumont 2003, no pet.);
 Renteria v. Trevino
, 79 S.W.3d 240, 242 (Tex. App.—Houston [14th Dist.] 2002, no pet.).  GM and Jerry’s Chevrolet challenged whether there is any evidence to support the first, third, and fourth elements.

Gilbert’s affidavit states that at the time he purchased the pickup truck, he also purchased an extended service agreement through the dealership for $1,785.00; however, when the engine on the pickup truck had to be replaced, the service department told him the vehicle had been “submerged,” when it had not, and then revoked the service agreement.  These statements provide the basic underlying facts to support the conclusion that an agreement was made, Gilbert tendered performance and GM and Jerry’s Chevrolet did not, and Gilbert suffered damages as a result of GM’s and Jerry’s Chevrolet’s failure to perform.  Thus, the statements in the affidavit are sufficient to raise a fact issue as to whether the parties formed an agreement, whether the agreement was breached, and whether Gilbert sustained damages as a result.

Therefore, we hold that Gilbert’s affidavit is sufficient to raise an issue of fact regarding his breach of contract claim and, thus, the trial court improperly granted summary judgment on this claim.

E. Breach of Warranty Claim

Finally, although in his pleadings Gilbert’s breach of warranty claim is not specific,
(footnote: 7) we conclude that the statements in his affidavit are sufficient to raise a fact issue as to whether there was a breach of the implied warranty of merchantability.

A plaintiff in an implied warranty of merchantability case has the burden of proving that a product was defective at the time it left the manufacturer’s or seller’s possession.  
Chandler v. Gene Messer Ford
,
 Inc.
, 81 S.W.3d 493, 502 (Tex. App.—Eastland 2002, pet. denied).  To prove that the product was defective, he must show that it was unfit for the ordinary purpose for which it was used because of a lack of something necessary for adequacy.  
Hyundai Motor Co. v. Rodriguez
, 995 S.W.2d 661, 665 (Tex. 1999).  A plaintiff does not have to use direct or expert opinion evidence to show that a product has a defect; he can instead meet his burden by using circumstantial evidence.  
Plas-Tex, Inc. v. U.S. Steel Corp.
, 772 S.W.2d 442, 444 (Tex. 1989).  A consumer may satisfy his burden by showing that a product functioned improperly under normal use.  
See id. 
at 444-45.

The ordinary purpose of an automobile is to provide transportation.  
Chandler
, 81 S.W.3d at 503.  Here, Gilbert’s affidavit states that he purchased a new pickup truck, yet only twenty-seven days later, he began experiencing problems with the truck.  As previously stated, the problems included, but were not limited to, “wind noise in the driver’s side rear door, driver’s seat not holding settings and reclining while vehicle is in use, driver’s seat heater inoperable, engine top-end knocking, lumbar cushion airing up on its own while vehicle in use, transmission slipping, and incorrect tire alignment.”  Furthermore, after the truck had been driven only about 26,000 miles, the engine had to be replaced.

Gilbert’s affidavit also states that from April through September 2002, he repeatedly took the truck in for service, yet none of the problems were corrected.  Consequently, he suffered damages because, among other things, he kept the vehicle and continued to make payments toward the balance owed on the note and he took time off work and lost wages in order to deal with the problems with the truck.  Moreover, Gilbert’s affidavit states that he believed the vehicle was unsafe.

Again, viewed in the light most favorable to Gilbert, we conclude that the statements in the affidavit are sufficient to raise a fact issue as to whether GM and Jerry’s Chevrolet breached the implied warranty of merchantability and whether Gilbert suffered damages as a result of the breach. Therefore, we hold that Gilbert’s affidavit is sufficient to raise an issue of fact regarding his breach of warranty claim and, thus, the trial court improperly granted summary judgment on this claim.

VI. Conclusion

Because we hold that Gilbert’s affidavit is not sufficient to raise an issue of fact on each element of his failure to disclose claim under the DTPA, we affirm the trial court’s judgment as to that claim.  However, we reverse the trial court’s judgment as to his remaining DTPA claims, his breach of contract claim, and his breach of warranty claims and remand for trial because we hold that Gilbert’s affidavit is sufficient to raise an issue of fact as to those claims.  Finally, because Gilbert’s occupations code claims were not within the trial court’s jurisdiction, we reverse and remand the claims to the trial court with instructions that the trial court abate its proceedings until Gilbert exhausts his administrative remedies.  
See Subaru of Am.
,
 Inc.
, 84 S.W.3d at 228.

ANNE GARDNER

JUSTICE

PANEL F: DAUPHINOT, HOLMAN, and GARDNER, JJ.

DELIVERED:  June 22, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
In his original petition, Gilbert actually alleged violations of sections 4.07(a) and 5.01(1) of the Texas Motor Vehicle Code; however, effective June 1, 2003, and before the petition in this case was filed, those statutes were repealed and nonsubstantively recodified as sections 2301.205 and 2301.352, respectively, of the occupations code.  
See 
Act of May 22, 1997, 75th Leg., R.S., ch. 639, § 27, 1997 Tex. Gen. Laws 2185, 2197, 
repealed by 
Act of May 22, 2001, 77th Leg., R.S., ch. 1421, § 13, 2001 Tex. Gen. Laws 4570, 5020 (current version at 
Tex. Occ. Code Ann. 
§ 2301.352 (Vernon 2004)); Act of May 19, 1995, 74th Leg., R.S., ch. 357, § 15, 1995 Tex. Gen. Laws 2887, 2894, 
repealed by 
Act of May 22, 2001, 77th Leg., R.S., ch. 1421, § 13, 2001 Tex. Gen. Laws 4570, 5020 (current version at 
Tex. Occ. Code Ann. 
§ 2301.205(a) (Vernon 2004)); 
see also 
House Comm. on State Affairs, Bill Analysis
, Tex. H.B. 2813, 77th Leg., R.S. (2001) (emphasizing that the amendment of the occupations code was a nonsubstantive revision and that the legislative intent was to recodify only).  Therefore, we will refer to these causes of action as occupations code claims.

3:
Appellant’s sole point is sufficient to preserve his complaint.  
See Malooly Bros.
,
 Inc. v. Napier
, 461 S.W.2d 119, 121 (Tex. 1970) (recommending a general point of error stating “the trial court erred in granting the motion for summary judgment”)
.
  We are guided by the principle that we must construe the rules on briefing liberally.  
See 
Tex. R. App. P.
 38.9;
 Republic Underwriters Ins. Co. v. Mex-Tex
,
 Inc.
, 150 S.W.3d 423, 427 (Tex. 2004) (emphasizing that court has instructed courts of appeals to construe briefs liberally and not impose requirements not “absolutely necessary” to effectuate the purpose of the briefing rules).

4:
GM and Jerry’s Chevrolet contend that Gilbert has waived error and that his appeal should be dismissed because he failed to cite any legal authority. However, the standards for reviewing summary judgments are well known.  
See Jennings v. Burgess
, 917 S.W.2d 790, 792-93 (Tex. 1996)
.

5:
GM and Jerry’s Chevrolet did not object to the affidavit in the trial court.  Furthermore, Gilbert’s affidavit contains factual statements based on his personal knowledge and a statement that he is competent to testify to those matters.  
See 
Tex. R. Civ. P.
 166a(f).  Therefore, the affidavit is properly before the court.

6:
GM and Jerry’s Chevrolet contend that Gilbert’s appeal should be dismissed because he failed to cite to any evidence in the record; however, we note that the record in this case is very thin and that since the motion for summary judgment was based on “no evidence,” we need not “search the record” because the evidence is contained in Gilbert’s one affidavit.

7:
We note that GM and Jerry’s Chevrolet filed no special exceptions.