

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-17-00368-CV

IN THE MATTER OF THE MARRIAGE OF
SUSAN KAY HARDIN AND JOHN B. HARDIN, III

On Appeal from the 46th District Court
Wilbarger County, Texas
Trial Court No. 27,685, Honorable Dan Mike Bird, Presiding

February 25, 2019

## OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

Appellant, John B. Hardin III, appeals the trial court's division of the parties' community estate incident to his divorce from appellee, Susan Kay Hardin. Specifically, John contends that the trial court abused its discretion in refusing to consider the full value of Susan's Teacher Retirement System (TRS) retirement annuity and that such error rendered the division of the community estate manifestly unjust. We reverse and remand.

## Factual and Procedural Background

John and Susan were married in 1977. In July of 2016, Susan filed a petition for divorce from John. John filed his answer and counterpetition for divorce in August of 2016. At the time of their filings, Susan was sixty-one years old and had been retired from teaching since 2010, and John was sixty-two years old and had been retired from Vernon College since 2015.

By the time of the trial, the parties had agreed to the valuation and division of most of the community's assets and liabilities. The primary issue for the trial court was the valuation and division of the parties' retirement plans. John's retirement plan, an Optional Retirement Plan (ORP), was valued at approximately $357,000 at the time of trial. When Susan retired, she elected to receive her TRS retirement benefits with a ten-year guaranteed payment of $2,590.60 per month, and a lifetime annuity paid in the same amount thereafter until her death. Susan's TRS plan is based on her twenty-eight years of creditable service, but five of those years were purchased with Susan's separate property funds. John does not dispute that eighteen percent of Susan's TRS retirement benefits is her separate property. At the time of trial, Susan's expert, Dr. James Owen, testified that the guaranteed portion of Susan's retirement plan had a present value of $89,925, but he was only willing to value the nonguaranteed portion at $2,590.60 per month for as many months as Susan lived beyond the guaranteed period. John's expert, John T. Truelove, agreed that the guaranteed portion of Susan's retirement benefits should be valued at $89,925, but used actuarial tables to determine Susan's life expectancy and opined that Susan's retirement plan had a value of $574,325. Expressed

in terms of present-day value, Truelove opined that Susan's retirement account was worth $552,721.

At the close of the trial, the trial court took the matter under advisement and requested that the parties submit briefs relating to the proper method of valuing and dividing Susan's TRS retirement plan. After the parties filed briefs, the trial court issued its final decree of divorce that granted the divorce and apportioned uncontested assets and liabilities as agreed by the parties. As to the retirement accounts, the trial court awarded Susan all of her TRS retirement benefits and $160,000 of John's ORP retirement benefits. John requested findings of fact and conclusions of law, which were subsequently entered by the trial court. In them, the trial court found that the guaranteed portion of Susan's TRS retirement plan was worth $89,925, while the nonguaranteed portion was worth nothing. The trial court indicated that placing a present value on the nonguaranteed portion of Susan's retirement is "too speculative to be fairly done," and that doing so "would result in an unjust division of the marital estate." The trial court also explained that it considered the fact that John would receive Social Security benefits once he becomes eligible while Susan will not receive Social Security benefits as an important factor in achieving a just and right division of the community estate.

John appealed the trial court's division of the marital estate. By his appeal, John contends that the trial court abused its discretion when it refused to consider the full value of Susan's TRS retirement plan.

## Standard of Review

A trial court's division of a marital estate is reviewed for abuse of discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). A trial court abuses its discretion when it acts arbitrarily and unreasonably, or without reference to guiding rules and legal principles. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). However, the mere fact that a trial judge may decide a matter within its discretionary authority in a different manner than an appellate judge would in a similar situation does not demonstrate that an abuse of discretion has occurred. *Sw. Bell Tel. Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex. 1965).

When we review a family law case under the abuse of discretion standard, challenges to the sufficiency of the evidence do not constitute independent grounds of error but are relevant factors in determining whether the trial court abused its discretion. *Van Hooff v. Anderson*, No. 07-14-00080-CV, 2016 Tex. App. LEXIS 466, at *8 (Tex. App.—Amarillo Jan. 14, 2016, no pet.) (mem. op.) (citing *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.)). In determining whether the trial court abused its discretion by deciding an issue without sufficient evidentiary support, "we engage in a two-pronged inquiry: (1) [d]id the trial court have sufficient evidence upon which to exercise its discretion and (2) [d]id the trial court err in its application of that discretion?" *Id.* (quoting *Boyd*, 131 S.W.3d at 611).

## Applicable Law

The Family Code requires that the trial court divide the marital estate, including retirement benefits, in a manner that is just and right having due regard for the rights of each party. TEX. FAM. CODE ANN. §§ 7.001, .003 (West 2006). The trial court is afforded

4

broad discretion in making the division, and the division need not be mathematically equal. *Murff*, 615 S.W.2d at 698-99. However, the trial court's division must be equitable and, as such, the record must reflect some reasonable basis for an unequal division. *In re E.M.V.*, 312 S.W.3d 288, 291 (Tex. App.—Dallas 2010, no pet.). In making a division, the trial court may consider such factors as the spouses' capacities and abilities, benefits which the party not at fault would have derived from the continuation of the marriage, business opportunities, education, relative physical and financial conditions, outstanding financial obligations, disparity of ages, size of separate estates, and the nature of the property. *Murff*, 615 S.W.2d at 699. We should only reverse a trial court's division of property if the error materially affects the court's just and right division of the estate. *Von Hohn v. Von Hohn*, 260 S.W.3d 631, 640 (Tex. App.—Tyler 2008, no pet.).

Valuation errors, standing alone, do not constitute an abuse of discretion. *Thomas v. Thomas*, 603 S.W.2d 356, 358 (Tex. App.—Houston [14th Dist.] 1980, writ dism'd w.o.j.) (op. on remittitur). Like errors affecting the just and right division, errors in valuation of property do not require reversal unless the valuation errors render the trial court's division manifestly unjust. *Von Hohn*, 260 S.W.3d at 641. However, "a trial court abuses its discretion in dividing the community estate without knowledge of its extent and proof of its value." *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 549 (Tex. 2018) (Devine, J., concurring); *Finn v. Finn*, 658 S.W.2d 735, 746 (Tex. App.—Dallas 1983, no writ).

Analysis

John's sole appellate issue relates to the trial court's valuation of the nonguaranteed portion of Susan's TRS retirement account and the effect that this alleged

error had on the trial court's division of the community estate. The trial court found, based on agreement between the parties' experts, that the value of the guaranteed portion of Susan's retirement account was $89,925. However, the trial court found that the value of the nonguaranteed portion of Susan's retirement account is $0. John contends that the trial court abused its discretion by refusing to consider the full value of Susan's TRS retirement benefits, which includes the lifetime value of the nonguaranteed annuity.

During trial, John's expert, John T. Truelove, testified that, using actuarial tables, Susan was projected to live for another 24.4 years. Based on this life expectancy, Susan would receive 292.8 payments from her lifetime annuity. Using the discount interest rate that both experts agree applies to this case, Truelove testified that the value of Susan's retirement account was $574,325. After deducting the guaranteed portion and an eighteen percent separate property interest that the parties do not dispute, Truelove testified that the present value of the community's interest in the nonguaranteed portion of Susan's retirement benefits is $381,022.

Susan's expert, Dr. James Owen, testified that the nonguaranteed annuity portion of Susan's retirement plan had a value that is based on a monthly progression for as long as she lives. He testified that "its present value is basically $2,590.60 a month." Beyond this, Owen would not place a present value on the nonguaranteed portion of Susan's TRS retirement plan, explaining that placing such a value would be too speculative. Rather than placing an explicit value on the nonguaranteed portion of Susan's TRS retirement plan, Owen opined that it should be apportioned between the parties. *See Cearley v. Cearley*, 544 S.W.2d 661, 666 (Tex. 1976) (apportioning contingent benefits between the

6

parties foregoes "the difficulty of computing a present value" and divides the risk that the contingency may not occur).

After hearing the expert testimony and inquiring further into the appropriate valuation that should apply to the nonguaranteed portion of Susan's TRS retirement plan, the trial court concluded that the nonguaranteed portion of Susan's retirement account had no value. The trial court explained its reasoning in one of its findings of fact by stating, "[p]lacing present value on the non-guaranteed teacher retirement of [Susan] is too speculative to be fairly done, since it is not a guaranteed income stream. To do so would result in an unjust division of the marital estate." The problem, however, is that there is no evidence that supports the trial court's conclusion that the nonguaranteed portion of Susan's retirement benefits had no value.

We are aware of the difficulties of trying to place an appropriate value on a retirement asset that includes a contingent annuity. But, a trial court's valuation that does not fall within the range of values supported by the evidence constitutes an abuse of discretion. *See Martin v. Martin*, 797 S.W.2d 347, 351 (Tex. App.—Texarkana 1990, no writ) ("A division of property based on values that were not in evidence is an abuse of discretion."); *Mata v. Mata*, 710 S.W.2d 756, 760 (Tex. App.—Corpus Christi 1986, no writ) (same). Here, all the evidence established that the nonguaranteed portion of Susan's retirement plan was an asset of the community that had value. As such, we conclude that the trial court abused its discretion in failing to place a value on the nonguaranteed portion of Susan's TRS retirement plan.

The nonguaranteed portion of Susan's TRS retirement plan is an asset of the community and its value must be determined before the trial court could properly exercise its discretion in making a just and right division of the community estate. *Finn*, 658 S.W.2d at 746. This is especially true when we consider that the evidence would support that the value of the nonguaranteed portion of Susan's TRS retirement plan could be $381,022,[1] whereas the entire community estate excluding the nonguaranteed portion of Susan's retirement benefits is worth only $498,826. As such, the trial court's failure to ascribe any value to the nonguaranteed portion of Susan's TRS retirement plan substantially affected its "just and right" division of the community estate and, in such circumstances, we must remand the entire community estate for a new division. *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985).

## Conclusion

We sustain John's sole appellate issue, reverse that portion of the trial court's decree that divided the community estate, and remand for a new determination of the just and right division of the community estate. In all other respects, the trial court's decree of divorce is affirmed.

Judy C. Parker
Justice

---

[1] John's expert, Truelove, derived this value by utilizing actuarial tables to determine Susan's life expectancy, calculating the total benefits Susan is expected to receive ($758,527.68), discounting that amount to determine the present value of this portion of the plan ($574,325), and then subtracting out the guaranteed portion and Susan's eighteen percent separate property interest. *See Voronin v. Voronin*, 662 S.W.2d 102, 107 (Tex. App.—Austin 1983, no writ) (approving use of actuarial tables in determining value of community estate); *McKibben v. McKibben*, 567 S.W.2d 538, 539 (Tex. Civ. App.—San Antonio 1978, no writ) (same). We would also note that Owen specifically testified that the only difference he had with Truelove's valuation was the length of time each considered.