

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00285-CV

_____

GEORGE TOUPONSE, Appellant

V.

SUSAN TOUPONSE, Appellee

On Appeal from the 324th District Court
Tarrant County, Texas
Trial Court No. 324-654417-19

Before Kerr, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

After the trial court entered a final divorce decree that ended the marriage between appellant George Touponse and appellee Susan Touponse and that divided the community estate, George appealed and challenged portions of the trial court's property division. Specifically, he argues that two real-property awards were abuses of discretion because the trial court improperly characterized them as part of the community estate. We conclude that the trial court improperly characterized the real properties because they were owned by a limited-liability company, not the parties. Because that mischaracterization materially affected the trial court's division, we reverse that portion of the trial court's final divorce decree that divided the community estate and remand the entire community estate for a new division.

## I. BACKGROUND

George and Susan married in December 1993 and primarily lived in Connecticut. Susan moved to Texas in April 2018 to take a job at a Fort Worth private school. George, who had founded and operated several home-construction businesses in Connecticut during the marriage, stayed in Connecticut. George told Susan that he wanted to leave Connecticut and that he would move to Texas in 12 to 18 months after he sold "things, properties." George never moved and eventually stopped sending Susan money.

On January 14, 2019, Susan filed a petition for divorce in Texas, seeking a just-and-right division of the community estate; George answered but did not challenge

2

the trial court's personal jurisdiction over him. *See* Tex. Fam. Code Ann. §§ 6.301, 6.305; Tex. R. Civ. P. 120a.1, 121; *see also Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) (recognizing personal-jurisdiction requirement is a waivable right). On October 28, the trial court set the case for a December 11 trial. Mediation was unsuccessful.

On December 3—eight days before trial—George's father and his company, GGT Properties Inc., filed a lawsuit in Connecticut against three of George's businesses: Long Horizon Development, LLC; Bella Vista Associates, LLC; and Touponse Enterprises, Inc. In the suit, George's father and GGT alleged that, "[b]etween June of 2011 and 2019," GGT leased equipment to Long Horizon, Bella Vista, and Touponse Enterprises, with the understanding that the rents would be paid "on a running account." They alleged that the three companies owed, in total, $770,644 in unpaid rent.[1]

Two days later on December 5, George filed a counterpetition for divorce, asking for a just-and-right division of the community estate if a division agreement could not be reached. *See* Tex. Fam. Code Ann. § 7.006. On December 6, George moved to continue the December 11 trial on the basis of the Connecticut lawsuit. The trial court denied the continuance motion on December 9. On December 10,

---

[1]George's father and GGT averred that Bella Vista owed $40,000; Touponse Enterprises owed $582,011; and Long Horizon owed $148,633. But when giving a bottom-line, total amount of the unpaid rents, they stated they were owed $590,000.

Susan amended her petition, continuing to request a just-and-right division but asking that the Connecticut lawsuit "be the sole responsibility" of George because the suit had been "filed very late in this action."

At the December 2019 bench trial, the main issues between the parties were property related. Susan's financial expert, Thomas Stewart, calculated the fair-market value for the community-ownership interest in six entities: (1) Long Horizon; (2) Touponse Enterprises; (3) Ashford Woods, LLC; (4) Bella Vista; (5) T4 Holdings, LLC; and (6) Twin Farms, LLC. Stewart testified that the unpaid-rents claim in the Connecticut suit was "unusual" because (1) George had never mentioned that equipment rentals were overdue when George had led Stewart in an on-site observation of the entities and their assets and (2) the rentals were not reflected in the entities' corporate tax returns even though the rental payments "alleged to be owed go back several years." Susan proffered as an exhibit the equipment lease between GGT and Touponse Enterprises, which George and George's father had signed on January 10, 2019—four days before Susan had filed for divorce.

George's expert, Robert Bailes, reviewed Stewart's report and several business documents and testified to a different valuation for Long Horizon, Touponse Enterprises, and Twin Farms.

In George's court-ordered inventory and appraisement, which was admitted as a trial exhibit, George indicated that the Connecticut lawsuit involved a $582,211 "liability owed" to GGT and George's father. He valued his interest in T4 Holdings

4

at $22,000 and in Ashford Woods at $48,000. George's valuations of T4 Holdings and Ashford Woods seemed to include two properties: 486 South Main Street owned by T4 Holdings and 0 Bunker Hill Road owned by Ashford Woods.

In a January 17, 2020 letter "rendition," the trial court detailed its property division. The trial court also expressed skepticism about the Connecticut lawsuit:

> I am skeptical as to the lawsuit that has been filed by Husband's father's company against the entities owned by the community and by Husband's father. In the lawsuit, Husband's father's company is attempting to recover lease payments on equipment with those payments going back as far as 2011. The lease upon which the lawsuit is apparently based was signed on January 10, 2019, and the divorce was filed four days later on January 14, 2019. Husband and his father could not even get the names straight on the lease as, on the lease, Husband's company has leased the equipment to his father's company.[2] This, in my opinion, is a blatant attempt on the part of Husband to defraud Wife and the community estate. Husband is ordered to indemnify and hold Wife and the community estate harmless from all costs, losses, damages, or any recovery of any kind by Husband's father's company including any attorney's fees reasonably and necessarily incurred by Wife in the defense of that lawsuit.

The trial court signed a final decree of divorce on June 26, 2020, dividing the marital estate. As relevant to George's appellate complaints, the trial court awarded to George as his separate property (1) the South Main Street property and the Bunker Hill property; (2) a 50% interest in Long Horizon, Twin Farms, and T4 Holdings; and (3) a 33% interest in Ashford Woods. George's separate-property award as to Long

---

[2]The lease agreement between GGT and Touponse Enterprises named GGT as the lessee and Touponse Enterprises as the lessor; however, George signed the agreement as lessee and George's father signed as lessor.

5

Horizon and Twin Farms was awarded "subject to [Susan's] equitable interest." To that end, the trial court ordered George to pay Susan $700,000 partially due to "her equitable interest in the businesses." Finally, the trial court ordered George to indemnify Susan and the community estate from any liability arising from the Connecticut lawsuit.

George filed a motion for new trial attacking the trial court's valuation of Touponse Enterprises. Although the trial court held a hearing on the motion, it was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c). At George's request, the trial court made findings of fact and conclusions of law that tracked the prior letter rendition, including the trial court's skepticism of the timing and purpose of George's father's Connecticut lawsuit. *See* Tex. Fam. Code Ann. § 6.711. In its findings, the trial court characterized the South Main Street and Bunker Hill properties as part of the community estate, valued South Main Street at $209,400, and valued Bunker Hill at $122,600. The trial court also explained that it had considered Stewart's and Bailes's testimony and the fact that "Stewart [had] made an on site observation in Connecticut and was directed by [George] on that visit."[3]

---

[3]At the new-trial hearing, the trial court stated that it had found Stewart more credible than Bailes.

## II. REVIEW OF PROPERTY DIVISION

In his appellate issue, George contends that the trial court's property division was an abuse of discretion. He points to the trial court's "compound of errors,"[4] including awarding the South Main Street and Bunker Hill properties even though they were owned by limited-liability companies.

### A. STANDARDS

In dividing a marital estate, the trial court is to do so in a manner that it deems "just and right, having due regard for the rights of each party." Tex. Fam. Code Ann. § 7.001. We review the trial court's property division for an abuse of discretion, and presume that it exercised its discretion properly. *See Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex. 1981). A trial court abuses its discretion if the division is manifestly unfair. *Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980).

Although the trial court is not required to divide the marital estate equally, its division must be equitable and supported by a reasonable basis in the record. *See Halleman v. Halleman*, 379 S.W.3d 443, 452 (Tex. App.—Fort Worth 2012, no pet.); *O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.). *See generally Cameron v. Cameron*, 641 S.W.2d 210, 223 (Tex. 1982) ("[W]e continue the

---

[4]George asserts that his specified and "other errors" resulted in a manifestly unjust property division. We will only address alleged errors that George identifies and decline his invitation to independently hunt for unassigned errors. *See* Tex. R. App. P. 38.1(f), (i); *Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) (per curiam).

national trend endorsing the use of marital property as the means of settling the equities between divorcing spouses."). To the extent George argues that the evidence does not support the trial court's property division, we are still guided by the abuse-of-discretion standard but consider the evidentiary support (or lack thereof) as a factor relevant to our assessment of the trial court's exercise of discretion. *See Hinton v. Burns*, 433 S.W.3d 189, 193–94 (Tex. App.—Dallas 2014, no pet.); *Zeptner v. Zeptner*, 111 S.W.3d 727, 734 (Tex. App.—Fort Worth 2003, no pet.) (op. on reh'g).

### B. REAL PROPERTIES AWARDED TO GEORGE

George contends that the trial court's separate-property award regarding the South Main Street and Bunker Hill properties was an abuse of discretion because the properties were owned by business entities, not the parties; because the valuation failed to account for any debts attached to the properties; and because the properties had already been included in the valuations of T4 Holdings and Ashford Woods. Although not clearly stated, George seems to argue that because the real properties were improperly characterized as part of the community estate, were included as part of his separate-property award, and were overvalued, the property division as a whole was rendered manifestly unjust.

### 1. Specific Facts Regarding Award

In his inventory and appraisement, George stated that he owned 50% of T4 Holdings and that its value, which included the South Main Street property, was $22,000. Regarding Ashford Woods, George stated that his percentage of ownership

was 33%, that Ashford Woods owned the Bunker Hill property, and that the 33% interest had been valued by Stewart at $48,000. He listed no debts or liabilities against T4 Holdings, Ashford Woods, or the real properties.[5]

Susan stated in her inventory and appraisement that Ashford Woods' Bunker Hill property, which was a vacant lot, had been appraised at $122,600 and had been bought "to develop into a subdivision of 10 single family homes." She described T4 Holdings' South Main Street property as a ".35 acre commercial real estate office building" that had a total valuation of $209,400. She averred that George owned 100% of Ashford Woods and 50% of T4 Holdings

Stewart testified that, based on the parties' discovery responses, George owned 33% of Ashford Woods because George had "two silent partners" in that business. Stewart valued a 33% community interest in Ashford Woods at $60,000 and a 50% community interest in T4 Holdings at $24,500. Although Bailes reviewed Stewart's report, T4 Holdings' and Ashford Woods' formation documents, T4 Holdings' and Ashford Woods' bank statements, T4 Holdings' "QuickBooks files," T4 Holdings' recent tax returns, and real-estate appraisals for the South Main Street and Bunker Hill

---

[5]Because both T4 Holdings and Ashford Woods were formed during the marriage, the ownership percentages were presumptively part of George and Susan's community estate. *See* Tex. Fam. Code Ann. §§ 3.002–3.003. Indeed, George does not contend that the 50% portion of T4 Holdings or the 33% portion of Ashford Woods had been his separate property before the trial court's award and, certainly, does not do so by clear and convincing evidence. *See id.* § 3.003(b).

9

properties, he did not proffer an explicit valuation or ownership-percentage opinion regarding those two companies or their real properties.

In the final divorce decree, the trial court awarded to George as his separate property the South Main Street property, the Bunker Hill property, a 50% interest in T4 Holdings, and a 33% interest in Ashford Woods.[6] In its findings and conclusions, the trial court characterized the South Main Street and Bunker Hill properties as part of the community estate. Further, the trial court found that the value of a 50% interest in T4 Holdings was $22,000 but that T4 Holdings' South Main Street property was worth $209,400. The trial court valued a 33% interest in Ashford Woods at $40,000 and Ashford Woods' Bunker Hill property at $122,600.

## 2. Abuse of Discretion

It is uncontradicted that both T4 Holdings and Ashford Woods are limited-liability companies founded during George and Susan's marriage,[7] that T4 Holdings owned the South Main Street property, and that Ashford Woods owned the Bunker

---

[6]George asserts that the trial court actually awarded him only 50% of the community's interest in T4 Holdings and 33% of the community's interest in Ashford Woods, not the entirety of the community's interest. Because we ultimately conclude that this case must be remanded for a new division of the community estate, we need not decide the import of the trial court's percentage language in the final divorce decree. *See* Tex. R. App. P. 47.1.

[7]The parties repeatedly assert, with no record support, that the entities are partnerships and that their assets should be divided based on Texas partnership law. There is no evidence that T4 Holdings and Ashford Woods, both named as LLCs, were instead partnerships.

Hill property. It is also uncontradicted that both properties are located in Connecticut. That raises a preliminary conflict-of-laws question. George's and Susan's rights to the Connecticut properties are to be determined under the law of the state in which the land is situated—Connecticut law. *See Colden v. Alexander*, 171 S.W.2d 328, 335–36 (Tex. 1943); 38 Aloysius A. Leopold & Gerry W. Beyer, *Texas Practice Series: Marital Property and Homesteads* § 8.20 (2020). But no party pleaded and proved the substance of Connecticut law regarding the divisibility of corporate-owned property or that Connecticut law differs from Texas law; and no party requested the trial court to take judicial notice of Connecticut's corporate or marital-estate law. *See* Tex. R. Evid. 202; *Gevinson v. Manhattan Constr. Co. of Okla.*, 449 S.W.2d 458, 465 n.2 (Tex. 1969). In fact, it appears the parties never mentioned the issue at all. Accordingly, we presume that Connecticut law is the same as Texas law regarding the divisibility of a business entity's real property.[8] *See Gevinson*, 449 S.W.2d at 465 n.2; *Burlington N. & Santa Fe Ry. Co. v. Gunderson, Inc.*, 235 S.W.3d 287, 291 (Tex. App.—Fort Worth 2007, pet. withdrawn); Leopold & Beyer, *supra* § 8.20.

A limited-liability company is a separate legal entity, and property owned by such a company is neither the community property nor the separate property of its members. Tex. Bus. Org. Code Ann. § 101.106(a)–(a-1); *Mandell v. Mandell*, 310 S.W.3d 531, 539 (Tex. App.—Fort Worth 2010, pet. denied); *cf. McKnight v.*

---

[8]Indeed, the parties' briefing discusses the effect of the Texas Business Organization Code on the transfer of a business entity's property.

*McKnight*, 543 S.W.2d 863, 867 (Tex. 1976) (holding same for specific assets owned by partnership). The business property that is subject to division is the interest in the limited-liability company itself, not the company's specific assets. Tex. Bus. Org. Code Ann. § 101.106(b); *In re Marriage of Collier*, 419 S.W.3d 390, 403 (Tex. App.—Amarillo 2011, no pet.). And a trial court is authorized to divide only the parties' community estate. *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) (per curiam) (citing *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139 (Tex. 1977)); *see also* Tex. Fam. Code Ann. § 7.001. Thus, the trial court clearly abused its discretion by characterizing the real properties owned by T4 Holdings and Ashford Woods as part of the community estate and, thereafter, awarding them to George as his separate property.

### 3. Effect on Just-and-Right Division

Our conclusion that the characterization of the real properties as part of the community estate was an abuse of discretion does not end our inquiry, however. Because we indulge every reasonable presumption in favor of the trial court's discretionary division, we must also determine whether that error materially affected the just-and-right division of the community estate. *See Jacobs v. Jacobs*, 687 S.W.2d 731, 732 (Tex. 1985); *Mandell*, 310 S.W.3d at 539; *Boyd v. Boyd*, 131 S.W.3d 605, 610 (Tex. App.—Fort Worth 2004, no pet.); *see also* Tex. R. App. P. 44.1(a)(1). If a mischaracterization has only a slight effect on the trial court's division of the community estate, the error does not require reversal; but if the mischaracterization is of such magnitude that it affects the just-and-right division of the community estate,

12

we must remand the entire case to the trial court for another division based on the correct characterization of the property. *Boyd*, 131 S.W.3d at 617 (citing *Zeptner*, 111 S.W.3d at 740).

George points out that the trial court's inclusion of the two properties, which the trial court had collectively valued at $332,000, increased the value of his separate-property award by that amount in a community estate valued at approximately $2.6 million.[9] Mischaracterizing the real properties as part of the community estate and awarding them to George resulted in an improper $332,000 increase in George's separate-property award, which is not an insignificant portion of the value of the community estate or of the value of George's separate-property award. In short, the improper characterization of the real properties resulted in an overvaluation of the community estate and of George's separate-property award, thereby materially affecting the trial court's property division. *See Lewis v. Lewis*, 944 S.W.2d 630, 630–31 (Tex. 1997) (per curiam); *Hopf v. Hopf*, 841 S.W.2d 898, 902 (Tex. App.—Houston [14th Dist.] 1992, no pet.); *see also In re Marriage of Hardin*, 572 S.W.3d 310, 314–15 (Tex. App.—Amarillo 2019, no pet.); *Attaguile v. Attaguile*, 584 S.W.3d 163, 177–79 (Tex. App.—El Paso 2018, no pet.); *Zeptner*, 111 S.W.3d at 740–41; *In re Marriage of Taylor*, 992 S.W.2d 616, 621 (Tex. App.—Texarkana 1999, no pet.).

---

[9]The parties agree that this was the trial court's valuation of the community estate.

## 4. Appropriate Disposition

Because we have found an abuse of discretion in the characterization of the community estate that materially affected the trial court's property division, we must "remand the entire community estate for a new division." *Jacobs*, 687 S.W.2d at 733; *see also Lewis*, 944 S.W.2d at 631; *McKnight*, 543 S.W.2d at 868. George challenges other aspects of the trial court's property division; however, we decline to address those arguments because we have already found reversible error in the division. *See Chi Hua Lee v. Linh Hoang Lee*, No. 02-18-00006-CV, 2019 WL 3024478, at *11 n.1 (Tex. App.—Fort Worth July 11, 2019, no pet.) (mem. op.). Because the error could affect whether the trial court deems the remaining awards to be just and right, we leave those issues to the trial court's consideration in its new division on remand. *See id.* at *11 & n.1, *12.

## III. CONCLUSION

The real properties that the trial court awarded to George as his separate property were not part of the community estate and, thus, were not subject to division. The inclusion of the real properties in the community estate and in George's separate-property award materially affected the trial court's division. Thus, we reverse the trial court's final divorce decree regarding the community-property division and remand the entire community estate for a new division. *See* Tex. R. App. P. 43.2(d), 43.3(a). We affirm that portion of the final divorce decree granting the parties a

divorce. *See* Tex. R. App. P. 43.2(a); *Gibson v. Gibson*, 190 S.W.3d 821, 823 (Tex. App.—Fort Worth 2006, no pet.) (op. on reh'g).

/s/ Brian Walker

Brian Walker
Justice

Delivered: July 1, 2021