

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00189-CV

_____

JOSHUA NSUH, Appellant

V.

IRINE NGUMASHI, Appellee

On Appeal from the 231st District Court
Tarrant County, Texas
Trial Court No. 231-726294-22

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Appellant Joshua Nsuh (Husband), acting pro se, appeals from a divorce decree dissolving his marriage to appellee Irine Ngumashi (Wife). In four issues, Husband challenges the trial court's rulings regarding Husband's and Wife's rights of possession and access to their two children, Husband's child-support obligation, and the division of the marital estate and contends that the trial court exhibited judicial bias against him. We will affirm.

### II. BACKGROUND

Husband and Wife[1] married in February 2018 and have two children, K.A. and B.M.[2] K.A. is autistic.

In November 2022, Wife filed for divorce on the grounds that Husband had treated her cruelly and that "discord or a conflict of personalities" had "destroy[ed] the legitimate ends of the marriage." Shortly thereafter, Husband filed a counterpetition.

---

[1]When Husband and Wife began dating in 2016, Husband lived in the United States, and Wife still lived in her native Cameroon. Wife immigrated first to Canada and then to the United States to marry Husband.

[2]Because the children are minors, we refer to them by their initials. *See* Tex. Fam. Code Ann. § 109.002(d); *cf.* Tex. R. App. P. 9.8(b)(2).

In February 2023, the trial court entered a temporary order granting Husband an expanded standard possession schedule whereby he had the children from Thursday to Tuesday of the first, third, and fifth weekends of the month.

In October 2023, a final bench trial was held. Both parties presented evidence and arguments regarding the pertinent issues of custody, child support, and the division of the marital estate. Wife also presented evidence that Husband had committed multiple acts of family violence against her.

At the conclusion of the hearing, the trial court orally ruled on the custody, child-support, and property-division issues. The trial court named Husband and Wife as joint managing conservators of their children and—at Wife's request—made permanent the possession schedule set forth in the February 2023 temporary order. Husband was ordered to pay child support of $1,525 per month based on his acknowledged income of $97,446 per year. The trial court divided the marital estate substantially equally, awarding Husband and Wife their respective vehicles; the personal property in their possession or control; and half of the community funds in the couple's bank, brokerage, and retirement accounts. It awarded Husband the marital residence but ordered him to pay Wife cash equal to half the equity in the home within six months.

In January 2024, the trial court signed a final divorce decree in accordance with its oral ruling. Husband filed a motion for new trial, which was denied by operation of law. This appeal followed.

## III. DISCUSSION

As noted, Husband raises four issues on appeal. But for the reasons set forth below, none of these issues provides a valid basis for reversing the trial court's final decree.

## A. Possession Schedule

In his first issue, Husband contends that the trial court abused its discretion by leaving in place the possession schedule established by the February 2023 temporary order. We disagree.

### 1. Applicable Law and Standard of Review

We review a trial court's decisions on custody, control, possession, and visitation matters for an abuse of discretion. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re M.P.B.*, 257 S.W.3d 804, 811 (Tex. App.—Dallas 2008, no pet.); *see In re W.M.*, 172 S.W.3d 718, 724 (Tex. App.—Fort Worth 2005, no pet.) (reasoning that the trial court has "wide latitude in determining the best interests of a minor child"). To determine whether a trial court abused its discretion, we must decide whether the court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004); *W.M.*, 172 S.W.3d at 725. A trial court does not abuse its discretion as long as there exists some evidence of a substantive and probative character to support its decision. *In re P.A.C.*, 498 S.W.3d 210, 214 (Tex. App.—Houston [14th Dist.] 2016,

4

pet. denied) (citing *Baltzer v. Medina*, 240 S.W.3d 469, 475 (Tex. App.—Houston [14th Dist.] 2007, no pet.)).

An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see Low*, 221 S.W.3d at 620. We must be cognizant that the trial court is in a better position to decide custody cases because "it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent." *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied).

The best interest of the child is always the primary consideration in determining issues of conservatorship and possession. Tex. Fam. Code Ann. § 153.002. While there is a statutory presumption that the parents be appointed joint managing conservators, there is no statutory presumption that joint managing conservators be awarded equal periods of possession. *Compare id.* § 153.131(b) (presuming that appointment of parents as joint managing conservators is in best interest of child), *with id.* § 153.135 (providing that joint managing conservatorship does not require the award of equal or nearly equal periods of physical possession of and access to the child). Thus, the mere fact that a trial court entered a possession order providing for unequal possession periods does not, in and of itself, show that an abuse of discretion

occurred. *See Garza v. Garza*, 217 S.W.3d 538, 552 (Tex. App.—San Antonio 2006, no pet.).

### 2. Analysis

Husband argues that the trial court abused its discretion when it established the expanded standard possession schedule for the children because it "disregard[ed] . . . evidence that [Husband] is better suited to meet the children's needs" and because Wife purportedly lied on the witness stand. In essence, Husband asks us to reweigh the evidence and reassess Wife's credibility, but this is not our function. Rather, the trial court, as factfinder, is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Donnelly v. K.T.*, No. 02-22-00183-CV, 2023 WL 4243341, at *4 (Tex. App.—Fort Worth June 29, 2023, no pet.) (mem. op.) (first citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); and then citing *Scott v. Wooley*, No. 02-19-00318-CV, 2020 WL 7063292, at *4 (Tex. App.—Fort Worth Dec. 3, 2020, no pet.) (mem. op.)).

Wife testified that the temporary expanded standard possession schedule ordered by the trial court "fit[] perfectly" with the family's lifestyle and "work[ed] well." She also testified that the children were used to the current schedule. This evidence supports the trial court's conclusion that leaving the existing structure in place was in the children's best interests—particularly in light of K.A.'s autism. *Cf. In re K.R.*, No. 02-15-00276-CV, 2016 WL 3198611, at *9 (Tex. App.—Fort Worth June 9, 2016, no pet.) (mem. op.) (recognizing that child's autism was a factor supporting

6

the trial court's conclusion that maintaining the existing possession schedule was in the children's best interests).  Because the record contains some evidence to support the trial court's decision regarding the possession schedule, we cannot conclude that an abuse of discretion occurred.  *See P.A.C.*, 498 S.W.3d at 214; *see also K.R.*, 2016 WL 3198611, at *9; *cf.* Tex. Fam. Code Ann. § 153.252 (providing that the standard possession schedule is presumed to "provide[] reasonable minimum possession of a child for a parent named as a possessory conservator or joint managing conservator" and to be "in the best interest of the child"); *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021) (same).

Accordingly, we overrule Husband's first issue.

## B.  Child Support

In his second issue, Husband contends that the trial court abused its discretion by ordering him to pay child support in the amount of $1,525 per month.  We disagree.

### 1.  Applicable Law and Standard of Review

We review a trial court's judgment granting child support for an abuse of discretion.  *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *B.K. v. T.K.*, No. 02-19-00472-CV, 2021 WL 2149621, at *2 (Tex. App.—Fort Worth May 27, 2021, no pet.) (mem. op.).  A trial court abuses its discretion when it acts arbitrarily or without reference to guiding principles or when it fails to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); *B.K.*,

7

2021 WL 2149621, at *2. Although sufficiency of the evidence is not an independent ground of error under the abuse-of-discretion standard, it is a factor in assessing whether the trial court abused its discretion. *In re A.L.S.*, 338 S.W.3d 59, 65 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *London v. London*, 94 S.W.3d 139, 143–44 (Tex. App.—Houston [14th Dist.] 2002, no pet.). When, as here, the trial court did not issue findings of fact or conclusions of law,[3] we presume that the trial court made all findings necessary to support the judgment and will uphold those findings if they are supported by the record. *A.L.S.*, 338 S.W.3d at 65 (citing *Chenault v. Banks*, 296 S.W.3d 186, 189 (Tex. App.—Houston [14th Dist.] 2009, no pet.)); *see Barber v. Barber*, No. 02-21-00291-CV, 2022 WL 4105363, at *3 (Tex. App.—Fort Worth Sept. 8, 2022, no pet.) (mem. op.) (citing *Worford*, 801 S.W.2d at 109).

## 2. Analysis

Husband contends that the trial court's child-support award—which was calculated by applying the statutory child-support guidelines[4] to Husband's acknowledged income of $97,446 per year—was "unfair" because under the court-ordered possession schedule, Husband and Wife will have substantially equal

---

[3]Although Husband requested findings of fact and conclusions of law, his request was not filed until well after the applicable deadline had passed. *See* Tex. R. Civ. P. 296. The trial court never filed findings of fact or conclusions of law in accordance with Husband's late-filed request, and Husband never filed a notice of past-due findings of fact and conclusions of law. *See* Tex. R. Civ. P. 297.

[4]*See* Tex. Fam. Code Ann. §§ 154.121, .122(a), .125(b).

"parenting time." But there is a rebuttable presumption that a child-support award conforming to the statutory guidelines is reasonable and in the children's best interests. *See* Tex. Fam. Code Ann. § 154.122(a). And "the amount of time of possession of and access to a child" is only one of many "relevant factors" that a court must consider in determining whether the guidelines' application "would be unjust or inappropriate" in a particular case. *See id.* § 154.123(b). Although the parties' substantially equal possession schedule might suggest that Husband's child-support obligation should be lower than the statutory-guideline amount, the trial court could have reasonably concluded that other factors—such as the fact that Husband has a significantly higher income than Wife[5]—militated in favor of adhering to the statutory guidelines. *See id.* § 154.123(b)(2) (providing that "the ability of the parents to contribute to the support of the child" is a relevant factor in determining whether to apply the statutory child-support guidelines). Thus, viewing the evidence in the light most favorable to the trial court's decision and indulging every legal presumption in favor of the judgment, *see Powell v. Swanson*, 893 S.W.2d 161, 163 (Tex. App.—Houston [1st Dist.] 1995, no writ), we cannot conclude that the trial court abused its discretion by ordering Husband to pay child support in accordance with the statutory guidelines.

---

[5]In his briefing, Husband acknowledged that he has a "significantly higher net annual income" than Wife.

9

Husband also contends that the trial court miscalculated his child-support obligation under the statutory guidelines because its calculations were based on an incorrect monthly-net-resource amount and did not account for the dental-insurance costs borne by Husband. But he cites nothing in the record to support this contention.[6] *See* Tex. R. App. P. 38.1(i) (mandating that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations . . . to the record"). Rather, he relies on paystubs attached as exhibits to his brief to show that the trial court purportedly miscalculated his child-support obligation. But because these attachments are not part of the appellate record, we may not consider them. *See Johnson-Oliver v. Lantana Cmty. Ass'n*, No. 02-23-00315-CV, 2024 WL 3282196, at *2 (Tex. App.—Fort Worth July 3, 2024, no pet.) (mem. op.) (declining to consider evidence and attachments included with appellant's brief because appellate courts "may not consider matters outside of the record except to determine [their] own jurisdiction"); *Castano v. San Felipe Agric., Mfg., & Irrigation Co.*, 147 S.W.3d 444, 452–53 (Tex. App.—San Antonio 2004, no pet.) (stating that an appellate court may not consider evidence included in or attached to briefs that is not

---

[6]Husband cites pages 96 and 97 of the reporter's record to support his contention that the trial court did not account for the costs of the children's dental insurance in calculating his child-support obligation, but these pages do not support this contention. Rather, they contain the trial court's discussion with counsel regarding the amount that Husband pays for health insurance; this discussion did not mention dental insurance and shed no light on whether or not Husband's dental-insurance costs were included in the child-support calculations.

part of the official record developed at trial). Having failed to provide appropriate record citations to support his contention that the trial court miscalculated his child-support obligation,[7] Husband has forfeited this complaint. *See* Tex. R. App. P. 38.1(i); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (observing that error may be waived by inadequate briefing); *Jackson v. Vaughn*, 546 S.W.3d 913, 922 (Tex. App.—Amarillo 2018, no pet.) (holding appellant had waived issue due to inadequate briefing); *see also McKinnon v. Wallin*, No. 03-17-00592-CV, 2018 WL 3849399, at *2–3 (Tex. App.—Austin Aug. 14, 2018, pet. denied) (mem. op.) (holding that pro se appellant had waived his issues by inadequate briefing).

We overrule Husband's second issue.

## C. Property Division

In his third issue, Husband argues that the trial court abused its discretion by dividing the marital estate without "consider[ing] all pertinent factors mandated by state law." We disagree.

---

[7]Our own review of the record revealed no evidence showing the exact amount that Husband pays for the children's dental insurance. Although Husband gave a rough estimate of the total amount that he pays for dental insurance, he admitted that he was "not too sure" how the costs were divided between himself and the children. *See* Tex. Fam. Code Ann. § 154.062(d)(5) (providing that when calculating an obligor's monthly net resources, a court shall deduct "expenses for the cost of . . . dental insurance . . . *for the obligor's child* ordered by the court" (emphasis added)).

11

### 1.  Applicable Law and Standard of Review

A trial court, having due regard for the rights of the parties and the children of the marriage, is charged with dividing the community estate in a "just and right" manner. Tex. Fam. Code Ann. § 7.001; *Watson v. Watson*, 286 S.W.3d 519, 522 (Tex. App.—Fort Worth 2009, no pet.). But to satisfy the just-and-right standard, a property division need not be equal. *See In re Marriage of Mozley*, No. 06-16-00004-CV, 2016 WL 4256926, at *3 (Tex. App.—Texarkana Aug. 12, 2016, no pet.) (mem. op.).

"Because the standards for dividing a community estate involve the exercise of sound judgment, a trial court must be accorded much discretion in its decision." *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018). "The division 'should be corrected on appeal only where an abuse of discretion is shown in that the disposition made of some property is manifestly unjust and unfair.'" *Id.* (quoting *Hedtke v. Hedtke*, 248 S.W. 21, 23 (Tex. 1923)). "The appellate court cannot merely reweigh the evidence." *Id.* "Accordingly, we will reverse the trial court's judgment only where it 'clearly abused its discretion and if the error materially affects the court's just and right division of the property.'" *In re Marriage of Williams*, No. 06-18-00041-CV, 2018 WL 6424245, at *4 (Tex. App.—Texarkana Dec. 7, 2018, pet. denied) (mem. op.) (quoting *Bigelow v. Stephens*, 286 S.W.3d 619, 620 (Tex. App.—Beaumont 2009, no pet.)). As noted, "[u]nder an abuse of discretion standard, legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion, but they are not independent grounds of error." *Id.* at *4 n.7 (citations omitted). "In determining

12

whether an abuse of discretion has occurred, we view the evidence in a light most favorable to the court's decision and indulge every legal presumption in favor of its judgment." *In re Marriage of Ford*, 435 S.W.3d 347, 350 (Tex. App.—Texarkana 2014, no pet.). "If there is any reasonable basis for doing so, we must presume that the trial court properly exercised its discretion." *Marriage of Williams*, 2018 WL 6424245, at *4.

## 2. Analysis

Husband challenges the trial court's property division on several grounds. None of these challenges have merit.

First, Husband argues that he should have received a greater share of the marital estate because he has a "significantly higher net annual income" than Wife and "contributed [more] to the marital property." But the mere fact that Husband earns more than Wife does not entitle him to a greater share of the marital estate. To the contrary, "[d]isparity in earning capacity is generally a factor weighing in favor of awarding a disproportionate share of the community property to the *lower* income earner." *Reyes v. Reyes*, No. 13-09-00105-CV, 2011 WL 2585976, at *6 (Tex. App.—Corpus Christi–Edinburg June 30, 2011, no pet.) (mem. op.) (emphasis added) (citing *O'Carolan v. Hopper*, 71 S.W.3d 529, 532–33 (Tex. App.—Austin 2002, no pet.)). Thus, we reject Husband's argument that the trial court abused its discretion by failing to award him a disproportionate share of the estate based on his higher income and purportedly more substantial financial contributions to the estate.

Second, Husband argues that the trial court abused its discretion by awarding Wife her vehicle, a 2021 Mitsubishi Outlander Sport valued at approximately $18,000, and ordering her to pay Husband only $5,000 to equalize the division of this asset.[8] But, as noted, a property division need not be exactly equal to satisfy the just-and-right standard. *See Marriage of Mozley*, 2016 WL 4256926, at *3. Given that (1) Husband had his own vehicle that was his separate property, (2) Husband earns significantly more than Wife, and (3) the parties seemingly acknowledged that the Mitsubishi Outlander was primarily driven by Wife and was considered her vehicle, we cannot conclude that the trial court's division of this asset was so unjust as to constitute an abuse of discretion. *See Marriage of Williams*, 2018 WL 6424245, at *4.

Third, Husband argues that the trial court erred by valuing the marital residence at $468,000 as proposed by Wife rather than accepting the $444,000 value listed on Husband's inventory and appraisement. Here again, Husband asks us to reweigh the evidence. But, as noted, this is not our purview; the trial court is the sole judge of the weight to be given to the parties' evidence. *See Donnelly*, 2023 WL 4243341, at *4. As factfinder, the trial court was free to reject Husband's evidence regarding the home's value and to accept Wife's. *See Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *see also In re Rhodes*, 293 S.W.3d 342, 344

---

[8]The court ordered that Wife's $5,000 payment to Husband for the vehicle would be netted out of the cash that Husband had to pay Wife for her half of the equity in the marital residence.

14

(Tex. App.—Fort Worth 2009, orig. proceeding) ("As the factfinder, the trial court weighs the evidence and judges a witness's credibility, and the trial court may accept or reject any witness's testimony in whole or in part."); *Lawyers Surety Corp. v. Hall*, No. B14-92-00788-CV, 1994 WL 7244, at *8 (Tex. App.—Houston [14th Dist.] Jan. 13, 1994, writ denied) (not designated for publication) (recognizing that when a trial court acts as factfinder, it is "within [its] power to accept or reject any evidence" (citing *Rego Co.*, 682 S.W.2d at 680)). Because the record contains some evidence that the home is worth $468,000, we cannot conclude that the trial court abused its discretion by valuing the home at that amount. *See P.A.C.*, 498 S.W.3d at 214.

"In any event, '[v]aluation errors, standing alone, do not constitute an abuse of discretion.'" *Tran v. Hoang*, No. 08-22-00100-CV, 2023 WL 4441138, at *5 (Tex. App.—El Paso July 10, 2023, no pet.) (mem. op.) (quoting *In re Marriage of Hardin*, 572 S.W.3d 310, 313 (Tex. App.—Amarillo 2019, no pet.)). Rather, "[a] valuation error constitutes reversible error only if it renders the trial court's division manifestly unjust." *Id.* Here, even if we were to assume that the trial court abused its discretion by accepting Wife's proposed value of the marital residence, we cannot conclude that the trial court's valuation—which is only approximately six percent higher than the value reflected in Husband's inventory—rendered the property division manifestly unjust.

Finally, Husband argues that the trial court erroneously characterized as community property certain purportedly separate funds that he had paid from his

Chase Bank account towards the purchase of the marital residence. But based on our review of the record, we cannot conclude that the trial court abused its discretion by concluding that Husband had failed to carry his burden to demonstrate that these funds were separate property.

Generally, all property possessed by either spouse during or on dissolution of the marriage is presumed to be community property. *See* Tex. Fam. Code Ann. § 3.003(a). This is a rebuttable presumption, and a spouse claiming that any asset is separate property must prove the separate character of the property by clear and convincing evidence. *See id.* § 3.003(b). "A party seeking to rebut the community presumption must trace the assets on hand during the marriage back to property that is separate in character." *In re Marriage of Nash*, 644 S.W.3d 683, 696–97 (Tex. App.—Texarkana 2022, no pet.) (quoting *In re Marriage of Born*, No. 06-08-00066-CV, 2009 WL 1010876, at *2 (Tex. App.—Texarkana Apr. 16, 2009, no pet.) (mem. op.)). "Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property." *Id.* at 697 (citing *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.)). "[C]onclusory or uncorroborated testimony that funds are separate property is insufficient to rebut the community presumption, unless there is also evidence that traces the funds." *Id.* (quoting *Marriage of Born*, 2009 WL 1010876, at *5); *accord Remley v. Remley*, No. 02-07-00044-CV, 2008 WL 4355347, at *3 (Tex. App.—Fort Worth Sept. 25, 2008, no pet.) (per curiam) (mem. op.) (citing *Irvin v.*

16

*Parker*, 139 S.W.3d 703, 708 (Tex. App.—Fort Worth 2004, no pet.)). Any doubt as to the character of the property should be resolved in favor of the community estate. *Irvin*, 139 S.W.3d at 708 (citing *Boyd*, 131 S.W.3d at 612); *Akin v. Akin*, 649 S.W.2d 700, 703 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.).

At trial, Husband claimed that he had used $36,000 of his separate funds—which had been deposited in a Chase Bank account—to help fund the down payment on the marital residence. But the only evidence Husband presented to support this claim was his own testimony and a table—which was admitted as a "summary" of Husband's testimony—showing the monthly balances of his checking and savings accounts at Chase Bank from January 2018[9] to the time the home was purchased in October 2020.[10] Husband presented no checks, deposit slips, or other bank records to show where the funds in the account had come from or to corroborate his testimony that he had used the funds from this account to make the down payment on the marital residence. In the absence of such evidence tracing the funds, we cannot conclude that the trial court abused its discretion by concluding that Husband

---

[9]As noted, Husband and Wife married in February 2018.

[10]We note that Husband's Chase Bank account summary reflected a total balance of only $7,862.30 as of January 2018—the last month before Husband and Wife married. Thus, it is unclear how this summary supports Husband's contention that he had used $36,000 in separate funds to make the down payment on the marital residence.

17

had failed to satisfy his burden to rebut the community presumption. *See Marriage of Nash*, 644 S.W.3d at 697.

Having concluded that the trial court's property division was not so unjust as to constitute an abuse its discretion, *see Marriage of Williams*, 2018 WL 6424245, at *4, we overrule Husband's third issue.

## D. Judicial Bias

In his fourth issue, Husband argues that the trial court exhibited judicial bias against him.[11] We disagree.

---

[11]Within the section of his brief addressing his fourth issue, Husband raises two additional miscellaneous complaints.

First, he contends that "[t]here was a discrepancy" between the trial court's oral ruling and the final decree regarding the possession schedule. Husband first raised this issue in a motion for new trial. Although a motion for new trial is the proper mechanism for preserving such a complaint, *see In re I.L.*, 580 S.W.3d 227, 244 (Tex. App.—San Antonio 2019, pet. dism'd), Husband's motion stated only that the possession schedule set forth in the decree was "not accurate" in light of the trial court's expressed intention to maintain the possession schedule set forth in the February 2023 temporary order. But Husband failed to identify any specific aspects of the decree's possession schedule that were purportedly inaccurate. *See Nasr v. Whitehead*, No. 05-20-00766-CV, 2022 WL 3593346, at *3 (Tex. App.—Dallas Aug. 23, 2022, no pet.) (mem. op.) (holding appellant had failed to preserve error because he "did not make a timely, *specific* objection or motion in the trial court with *sufficient specificity* to make the trial court aware of [appellant's] issues" (emphasis added)). Likewise, in his appellate briefing, Husband does not explain how the decree "deviated" from the trial court's oral ruling, nor does he cite to any specific provisions in the decree to support his appellate argument. Thus, by failing to make a sufficiently specific motion in the trial court or to adequately brief the issue before this court, Husband has forfeited this complaint. *See* Tex. R. App. P. 33.1(a), 38.1(i).

Second, Husband complains that the trial court purportedly awarded Wife $15,000 in appellate attorney's fees after Husband perfected his appeal from the final

## 1. Applicable Law

All parties have a right to a fair trial before an impartial judge. *Ellason v. Ellason*, 162 S.W.3d 883, 887 (Tex. App.—Dallas 2005, no pet.). But only in the rarest of circumstances will judicial rulings show favoritism or antagonism to the degree necessary to conclude that the trial was not fair or that the judge was not impartial. *Id.*; *see also Haynes v. Union Pac. R.R.*, No. 01-18-00181-CV, 2020 WL 425130, at *11 (Tex. App.—Houston [1st Dist.] Jan. 28, 2020, pet. dism'd). Indeed, when presented with allegations of judicial bias, the United States Supreme Court has written that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion" and that the opinions a judge forms during a trial do not call into question that judge's bias or partiality "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994).

---

decree. But while the record reflects that Wife filed a Motion for Temporary Orders During Appeal requesting attorney's fees, it does not contain an order or hearing transcript reflecting the trial court's ruling on this motion. In any event, the gravamen of Husband's complaint is that holding a hearing and awarding attorney's fees while an appeal is pending "constitutes a procedural irregularity," but Family Code Sections 6.709 and 109.001 explicitly authorize trial courts to issue temporary orders granting attorney's fees while an appeal is pending. *See* Tex. Fam. Code Ann. §§ 6.709(a)(2), 109.001(a)(5); *In re Garza*, 153 S.W.3d 97, 103 (Tex. App.—San Antonio 2004, orig. proceeding) (holding that trial court "acted within its authority" by awarding husband contingent appellate attorney's fees while appeal was pending). Thus, even assuming that the trial court issued such a temporary order, this would not constitute a "procedural irregularity."

Similarly, a judge's critical, disapproving, or even hostile remarks during trial to counsel, the parties, or their cases do not ordinarily support a bias or partiality challenge. *Id.*, 114 S. Ct. at 1157. Further, "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even . . . judges, sometimes display" do not establish bias or partiality. *Id.* at 555–56, 114 S. Ct. at 1157. "A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* at 556, 114 S. Ct. at 1157.

As with many other alleged errors, to preserve a partiality complaint, a party generally must object to the trial court's alleged improper conduct or comment when it occurs. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Markowitz v. Markowitz*, 118 S.W.3d 82, 88 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g); *see also Haynes*, 2020 WL 425130, at *9. However, the Texas Supreme Court has recognized that claims of judicial bias are not waived by a failure to object in the trial court if "the conduct or comment cannot be rendered harmless by proper instruction." *Dow Chem. Co.*, 46 S.W.3d at 241. As we have explained previously, "[t]his 'limited,' 'narrow,' and 'rare' exception to the preservation-of-error requirements in civil cases essentially requires a harm analysis—the error 'probably caused the rendition of an improper judgment'—to determine if the error was incurable and, therefore, not subject to waiver." *In re L.S.*, No. 02-17-00132-CV, 2017 WL 4172584, at *16 (Tex. App.—Fort Worth Sept. 21, 2017, no pet.) (mem.

20

op.) (first citing Tex. R. App. P. 44.1(a)(1); then citing *In re B.L.D.*, 113 S.W.3d 340, 350–51 (Tex. 2003); then citing *In re K.R.*, 63 S.W.3d 796, 799–800 (Tex. 2001); and then citing *Dow Chem. Co.*, 46 S.W.3d at 241).

## 2. Analysis

Here, Husband points to several purportedly improper judicial actions or comments to support his partiality complaint: (1) the trial court's refusal to admit certain documents supposedly offered into evidence by Husband; (2) the trial court's purported "bullying" of Husband's lawyer by stating, "[L]et me just stop you there because I'm tired of hearing it.  I'll just be honest with you," when she was questioning Husband about Wife's inability to drive for most of the marriage; (3) the trial court's asking Husband, "Sir, when you brought . . . your wife over from Cameroon, did she know how to drive?"; and (4) the trial court's purportedly requiring Husband to "fulfill an impossible task" by ordering him to turn over to Wife certain women's apparel that is not in his possession.  But having reviewed the record, we cannot conclude that any of the complained-of conduct or comments reflect the "deep-seated favoritism or antagonism" necessary to support a judicial-bias complaint. *See Liteky*, 510 U.S. at 555, 114 S. Ct. at 1157.

First, Husband failed to identify any specific documents that the trial court declined to admit, nor does he cite to the portions of the record reflecting the

complained-of evidentiary rulings.[12] Thus, we conclude that he has forfeited due to inadequate briefing any complaint of judicial bias based on the trial court's failure to admit these documents. *See* Tex. R. App. P. 38.1(i); *Fredonia State Bank*, 881 S.W.2d at 284; *see also McKinnon*, 2018 WL 3849399, at *2–3. Further, even if Husband had properly briefed the issue, judicial rulings rarely constitute a valid basis for a bias or partiality complaint. *See Liteky*, 510 U.S. at 555, 114 S. Ct. at 1157.

Second, contrary to Husband's assertions, the trial court's above-referenced comment to Husband's lawyer and question to Husband do not reflect any bias or antagonism, much less the "deep-seated favoritism or antagonism" necessary to support a judicial-bias complaint. *See id.* Based on our review of the record, it is clear that these comments do not reflect judicial bias but instead merely reflect the trial court's effort to manage the proceedings and prevent trial time from being wasted with questions that the court did not view as helpful or relevant to the key issues in the case. *See Johnson v. Paxton*, No. 02-22-00459-CV, 2023 WL 5115303, at *4 (Tex. App.—Fort Worth Aug. 10, 2023, no pet.) (mem. op.) (noting that "[a] trial court has broad discretion over the conduct of a trial" and "[i]n the exercise of th[at] discretion . . . may, among other things, 'control the presentation of evidence so as to avoid needless consumption of time'" (quoting *In re M.A.S.*, 233 S.W.3d 915, 924 (Tex. App.—Dallas 2007, pet. denied))).

---

[12]We note that Husband does not raise a separate appellate issue complaining specifically about the exclusion of evidence.

Finally, the record belies Husband's assertion that the trial court ordered him to fulfill an impossible task by turning over to Wife certain women's apparel that was not in his possession. The trial court merely ordered Husband to turn over "[w]hatever dresses are in the house." After Husband explained that he could not find any dresses in the house, the trial court reiterated, "Whatever dresses are in the house, they're hers." Later, the following exchange occurred between the trial court and Husband:

> The Court: . . . The dresses, I need you to find those dresses and give them to her. Anything else that is a woman's apparel, unless you're using them, sir, I want you to give them to her.
>
> [Husband]: I gave her everything I had in the home.
>
> The Court: Okay. See what else -- see if you can find them.
>
> [Husband]: Okay.

This exchange makes clear that the trial court directed Husband to look for the dresses that Wife believed were in the marital residence to see if he could find them and to turn over any dresses that he found. This is not an impossible task, and the trial court's asking Husband to fulfill it does not reflect judicial bias.

Because Husband has not shown judicial bias or prejudice, we overrule his fourth issue.

## IV. CONCLUSION

Having overruled all of Husband's issues, we affirm the divorce decree.

23

/s/ Dana Womack

Dana Womack
Justice

Delivered: November 27, 2024